# MARY T. SPRINGROSE, A MINOR, BY JAMES V. SPRINGROSE, HER FATHER AND NATURAL GUARDIAN, AND ANOTHER v. BERT L. WILLMORE AND ANOTHER.

192 N. W. 2d 826.

December 10, 1971—No. 42833.

*Popham, Haik, Schnobrich, Kaufman & Doty, David S. Doty, Robert A. Minish,* and *Gary R. Macomber,* for appellants.

*Meagher, Geer, Markham & Anderson, James W. Torke,* and *O. C. Adamson II,* for respondents.

PETERSON, JUSTICE.

The central issue for determination is whether the judicially created doctrine of implied assumption of risk, as an absolute defense separate from contributory negligence, should be abolished. It arises out of an injury to a teen-age passenger in an automobile negligently operated by its teen-age driver—the claim of the injured passenger and her father against the driver and owner of the automobile having been denied solely on the ground that the passenger had assumed the risk of injury.

Assumption of risk has been conceptually distinguished according to its primary or secondary character. Primary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all—that is, whether the defendant had any duty to protect the plaintiff from a risk of harm. It is not, therefore, an affirmative defense. The limited duties owed licensees upon another's property, e. g., Sandstrom v. AAD Temple Bldg. Assn. Inc. 267 Minn. 407, 127 N. W. 2d 173 (1964), or patrons of inherently dangerous sporting events, e. g., Aldes v. St. Paul Ball Club, 251 Minn. 440, 88 N. W. 2d 94 (1958), are illustrative. The classes of cases involving an implied primary assumption of risk are not many and, because this is not such a case, we have no occasion to determine the method by which such issue should be presented to a jury.

Secondary assumption of risk, as an affirmative defense to be proved by a causally negligent defendant, is the principal issue for our determination now. The doctrine of implied assumption of risk must, in our view, be recast as an aspect of contributory negligence, meaning that the plaintiff's assumption of risk must be not only voluntary but, under all the circumstances, unreasonable. Instruction 135, Minnesota Jury Instruction Guides, remains an appropriate definition of assumption of risk, but Instruction 136 is to be abandoned. The practical and most important impact of this decision is to mandate that, like any other form of contributory negligence, assumption of risk must

be apportioned under our comparative negligence statute, Minn. St. 604.01, subd. 1.

Our departure from precedent is neither recent nor radical. The bench and bar will observe the extent to which we have responded to the landmark opinion of Mr. Chief Justice Joseph Weintraub in Meistrich v. Casino Arena Attractions, Inc. 31 N. J. 44, 155 A. 2d 90, 82 A. L. R. 2d 1208 (1959), as well as those of other courts and commentators.[1] Quite apart from Meistrich, we have in other situations, most notably in Peterson v. W. T. Rawleigh Co. 274 Minn. 495, 498, 144 N. W. 2d 555, 558 (1966), ourselves acknowledged the emerging concept that an injured plaintiff's involuntary or otherwise not unreasonable assumption of risk should not exonerate a defendant from his causal negligence. This marks, as in the case at bar, merely a return to the earlier expression of Mr. Chief Justice Henry M. Gallagher in Hubenette v. Ostby, 213 Minn. 349, 351, 6 N. W. 2d 637, 638 (1942), that "[s]uch assumption of risk is but a phase of contributory negligence."

We had an opportunity in Parness v. Economics Laboratory, Inc. 284 Minn. 381, 170 N. W. 2d 554 (1969), to follow the lead of Meistrich in abolishing assumption of risk as a separate and distinct defense. Although we declined to do so then, in a situation where both contributory negligence and assumption of risk constituted absolute defenses, we expressly anticipated that "the question will be more meaningfully presented under the recently enacted statute abolishing contributory negligence as a complete defense" (284 Minn. 386, 170 N. W. 2d 558). The

---

[1] See, McConville v. State Farm Mutual Auto. Ins. Co. 15 Wis. 2d 374, 113 N. W. 2d 14 (1962); Colson v. Rule, 15 Wis. 2d 387, 113 N. W. 2d 21 (1962); Theisen v. Milwaukee Auto. Mutual Ins. Co. 18 Wis. 2d 91, 118 N. W. 2d 140 (1962); Felgner v. Anderson, 375 Mich. 23, 133 N. W. 2d 136 (1965); Bulatao v. Kauai Motors, Ltd. 49 Hawaii 1, 406 P. 2d 887 (1965); Parker v. Redden, 421 S. W. 2d 586 (Ky. 1967); Prosser, Torts (4 ed.) § 68; Note, 56 Minn. L. Rev. 47.

time has now come.[2] Although this departure from precedent is not compelled by the legislative enactment, the apportionment of loss between blameworthy plaintiffs and defendants is in harmony with its manifest determination of public policy regarding tort reparation.

Our retention of the terminology of implied assumption of risk, although only as an element of negligence, may be an unnecessary precaution in most situations. The only question for submission in the usual case, we think, will be whether the particular plaintiff was, under the circumstances, negligent in regard to his own safety, for under that general issue counsel may fully argue the issue in all its aspects. There may be unusual cases, however, where contributory negligence and assumption of risk, in any distinctive aspects, may be separately submitted, subject, of course, to a single apportionment verdict. Experience in the trial courts, as disclosed in their instructions and memoranda, will serve to demonstrate whether our reservations serve only to confuse and not to clarify the issue for the jury.

Our decision is prospective, so that it shall apply only to causes of action arising from and after the date of this decision, except that it shall apply also to the case at bar.

The situation in this appeal is not complicated. Plaintiff Mary Springrose, age 16, was a passenger in an automobile owned by defendant Bert Willmore and driven by his daughter, defendant Margaret Willmore, age 16. Mary and Margaret attended a school play at Edina High School and thereafter joined a group of about 15 other teen-age students to go to a Bridgeman's restaurant located at Highway No. 100 and Interstate No. 494 in Bloomington. The issues of negligence and assumption of risk

---

[2] The automobile accident involved in this litigation occurred on October 11, 1966, but the case did not go to trial until April 20, 1970. Minn. St. 604.01 was made applicable to any action the trial of which commenced after July 1, 1969 (L. 1969, c. 624, § 2), and in Peterson v. City of Minneapolis, 285 Minn. 282, 173 N. W. 2d 353 (1969), the validity of such application was upheld.

arose out of a series of "drag races" among the drivers of four cars transporting the group to and from the restaurant, a drag race between Margaret's car and another ultimately resulting in the Willmore automobile overturning and injuring plaintiff Mary.

Defendant Margaret, with plaintiff Mary as a front seat passenger, first raced with the driver of one of the other automobiles en route to the restaurant, proceeding at speeds approaching 60 miles per hour in a zone posted for a maximum of 50 miles per hour. They arrived at the restaurant without incident and remained there for about 45 minutes. Upon leaving the restaurant shortly after 10 p. m., the several automobile drivers raced to be first to the exit from the restaurant parking lot, Mary having resumed her position as Margaret's passenger. They drove back in the direction of the Edina High School. After stopping for a traffic light at the intersection of Highway No. 100 and 66th Street, about a mile from the restaurant, Margaret and the driver of another automobile raced from that stop and drove at speeds of about 55 miles per hour, in a 40-mile-per-hour zone, a distance of about 3 blocks to and through the intersection of Highway No. 100 and Valley View Road. Margaret, deciding that she had lost the race, began to slow down, but, upon brushing against a dividing curb north of the intersection, lost control of her automobile and overturned upon striking a guard rail on the right hand side of the highway.

Questions as to plaintiff Mary's contributory negligence and assumption of risk were submitted for separate answer by the jury, which found that she was not negligent but that she had assumed the risk. The evidence disclosed that she had consented to driving with defendant Margaret with knowledge of her relative inexperience as a driver and, more importantly, that she had continued as Margaret's passenger after the initial drag racing had demonstrated Margaret's disposition to drive dangerously. It appears that Mary at no time cautioned or protested about Margaret's manner of driving.

Plaintiffs made post-trial motions for an order striking the special verdict question and answer relating to Mary's assumption of risk, for judgment notwithstanding the verdict, and, in the alternative, for a new trial. The trial court denied the motions, appropriately ruling that any modification of our more recently expressed principles of law must be made by this court. This appeal is from the resulting judgment for defendants.

We reverse and remand for a trial limited to the issues of defendant Margaret's negligence and plaintiff Mary's contributory negligence. The issue of damages has been fully determined in the prior trial. We are not unmindful that the jury in the prior trial did find that Margaret was causally negligent and that Mary was not contributorily negligent, but neither finding is of controlling significance now. The finding of Margaret's causal negligence is insufficient to impose liability without the jury's apportionment of it in relation to any contributory negligence of Mary. The finding that Mary was not contributorily negligent is meaningless in view of the jury's finding that she had assumed the risk, now defined as a phase of contributory negligence. The jury necessarily must consider the totality of the evidence on these issues if it is to make a meaningful determination.[3]

Reversed and remanded.

---

[3] We appreciate that plaintiff Mary is deprived of the benefit of the prior jury finding that defendant Margaret was causally negligent and that, to some extent, she was not contributorily negligent. An unacceptable alternative would be to direct the jury that defendant Margaret was negligent and that plaintiff Mary was not contributorily negligent except as she assumed the risk, but we are convinced that this would hopelessly confuse the jury and impair achievement of a just result. If plaintiff does not receive the maximum benefit of the first jury's verdict, she does receive the more important benefit of inclusion in this prospective application of the new doctrine of contributory negligence under which she may now achieve financial recovery.