CASPER H. SCHROEDER AND ANOTHER v. JESCO, INC.
FIRST CONSTRUCTION COMPANY, THIRD-PARTY
DEFENDANT.

209 N. W. 2d 414.

July 6, 1973—No. 43801.

448

*Sachs, Latz & Kirshbaum, Mitchel I. Kirshbaum, Mordaunt, Walstad, Cousineau & McGuire,* and *Robert McGuire,* for appellants.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II,* and *William D. Flaskamp,* for respondent defendant.

*Hoppe & Healy* and *Robert L. Healy,* for respondent third-party defendant.

Heard before Knutson, C. J., and Peterson, Todd, and MacLaughlin, JJ.

MacLaughlin, Justice.

This is an action to recover damages sustained by plaintiff, Casper H. Schroeder, as a result of an industrial accident on March 26, 1969, in the construction of a building in the Metro Office Park project in Bloomington, Minnesota. A jury found that defendant, Jesco, Inc., was negligent and that its negligence

was the sole cause of the accident. However, the jury also found that plaintiff assumed the risk of a known hazard, thereby precluding any recovery by plaintiff.[1] Plaintiff appeals from an order denying his motion for judgment n.o.v. or for a new trial. We affirm.

On the day of the accident plaintiff, an electrician, was employed by Lee Electric Company, an electrical subcontractor on the Metro Office Park construction project. Defendant, Jesco, Inc., was the masonry subcontractor. The Metro Office Park project consisted of several identical office buildings, some of which had been completed prior to the accident.

On the date of the accident, plaintiff had just returned after several weeks' absence from work due to an injury to his toe. On that day, Jesco, Inc., was constructing a stairway between the first and second floors of the unfinished building where the accident occurred. Each of six buildings contained two sets of identical concrete stairways located 40 feet apart at opposite sides of the building. Starting at the basement level, the stairways rose a half story to a landing, then another half story to the first floor, then another half story to a landing, and finally another half story to the second floor. The stairways were constructed a half story at a time. First, a wooden form for the landing was built, and then a concrete landing was poured. Thereafter, the stairway connecting the floor to the landing and the stairway connecting the landing to the floor above were poured.

There is considerable evidence that at the time of the accident the so-called right-hand stairway in the building was completed. However, the left-hand stairway, where the accident occurred, was completed only from the basement to the first-floor level.

---

[1] Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971), was decided on December 10, 1971. Under that decision, if the instant cause of action had arisen after December 10, 1971, the assumption-of-risk defense would be considered a phase of contributory negligence to be submitted with, and apportioned under, Minnesota's comparative negligence statute, Minn. St. 604.01, subd. 1.

Defendant's crew was constructing the wooden form for the concrete landing between the first and second floors. To accomplish this, they placed a ladder on the completed landing between the basement and the first floor and used it to support a plank stretching from the ladder to the first floor. Defendant's employees used the plank as a place to stand and sit while constructing the wooden form for the landing. Eight-foot-long lumber beams were used in the construction of the wooden form. One of defendant's employees placed such a beam on the plank, and another employee came into contact with it, causing the beam to fall on plaintiff who was walking up the stairway below.

Plaintiff testified that at the time he was struck by the beam he was carrying an armload of electrical conduit from the basement to the second-floor level where he was working. He planned to use the left-hand stairway to get to the first floor, and then, because the stairway was not completed, he intended to use a ladder to get to the second floor. Previously that day plaintiff had completed one such trip from the basement to the second floor while carrying electrical conduit, and he was aware of the work being done by defendant's employees in the stairwell. Plaintiff was struck just as he began his ascent up the second half of the stairway from the basement to the first floor. In order to use the stairway where the accident occurred, plaintiff had to go around defendant's ladder which was on the platform and also had to make his way around defendant's tools, lumber, and other materials which were in the stairway for use in the construction of the form for the landing.

There were no signs warning employees not to use the stairway, and no barricades or other attempts to block the stairway. However, two of defendant's employees testified that each of them had warned every person attempting to use the left-hand stairway not to do so and had suggested that they use the completed right-hand stairway. Although neither employee could recall plaintiff specifically, one of them testified he had told someone carrying electrical conduit earlier that day to use the

other stairway but that the person had gone up and down the left-hand stairway in spite of the warning. The same employee testified that barricades were impractical because of the large amount of materials that had to be brought into the area of the stairway construction.

Plaintiff testified that he was aware that on construction jobs items such as lumber are sometimes dropped from one floor to another. He also testified that he had received no warning regarding the use of the left-hand stairway and that he did not think the right-hand stairway had been completed on the day of the accident.

1. Plaintiff argues that, as a matter of law, he cannot be held to have assumed the risk of the injury. The doctrine of assumption of the risk applies to one who voluntarily exposes himself to a known and appreciated risk arising from another's negligence. Assumption of the risk must be free and voluntary, and there must be some reasonable alternative left to plaintiff by defendant. Only where the facts are undisputed and reasonable men can draw but one conclusion does the issue of assumption of the risk become a question of law.

Plaintiff argues that assumption of the risk cannot, as a matter of law, be present in this case because (a) plaintiff was unaware of the specific risk encountered, and (b) plaintiff was unaware of an alternative method of avoiding the risk.

Plaintiff concedes that if he had been injured by making contact with defendant's ladder or plank, around which he had to maneuver, or had tripped over some of the equipment placed on the midway landing of the stairway he was ascending, the question of assumption of the risk would properly be for the jury. Plaintiff claims, however, that assumption of the risk cannot arise where the plaintiff is not aware of the specific risk being encountered and that plaintiff could not have known that this particular lumber beam would fall upon him.

The principal Minnesota case on which plaintiff relies is Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649 (1934). In that case,

the plaintiff was riding on the outside of a moving truck when it collided with another car. We held as a matter of law that the plaintiff did not assume the risk of a collision caused by the negligence of the driver of another car. We pointed out, however, that the plaintiff assumed risks naturally incident to his exposed position, such as the risk of being thrown from the truck upon its starting, stopping, turning a corner, or hitting a bump in the road.

We cannot agree with plaintiff's argument or his reliance on Guile. It is inconceivable that reasonable men would have to conclude that plaintiff, an experienced construction worker who knew that lumber would sometimes be dropped from one floor to another at construction sites, did not know and appreciate the risk of falling objects inherent in working under construction in progress.

Plaintiff contends, however, that assumption of the risk involves only static, preexisting conditions, e.g., a risk involving the ladder or materials on the stairway, and does not include the risk of defendant's subsequent negligent conduct. A study of Minnesota cases does not support that argument. Many cases have held or recognized that the assumption-of-risk defense was a question for the jury where the defendant's negligent conduct occurred after the plaintiff assumed the risk. See, e.g., Standafer v. First Nat. Bank of Minneapolis, 243 Minn. 442, 68 N. W. 2d 362 (1955); Hollinbeck v. Downey, 261 Minn. 481, 113 N. W. 2d 9 (1962); Tatro v. Carlson, 271 Minn. 536, 137 N. W. 2d 187 (1965); Ganser v. Erickson, 279 Minn. 235, 156 N. W. 2d 224 (1968). The Guile case, cited and relied upon by plaintiff, specifically states that the defense of assumption of the risk would have been available to the truckdriver if the plaintiff, riding on the outside of the truck, had been thrown from the truck through the negligence of its operator, as opposed to the negligence of a third-party driver. Obviously, that negligence would of necessity arise after the plaintiff had assumed the risk by riding on the outside of the truck. We hold that the question of whether

plaintiff knew and appreciated the risk was properly submitted to the jury.

An additional question is whether plaintiff knew of a reasonable alternative to using the left-hand stairway and whether the other stairway was completed and ready for use. Plaintiff testified that he did not believe the right-hand stairway was completed, although his testimony was equivocal. For example, he testified:

"Q. Your other claim was that that other stairway wasn't completed. That's what you told us a couple days ago.

"A. That's what I still—I'm not positive of that, but that's the way I feel.

"Q. But nothing physically would prevent you from using the other stairway if you had wanted to.

"A. I see no reason why or why not."

Defendant's witnesses testified they had told every person using the left-hand stairway on the day of the accident to use the right-hand stairway. One of them testified he had warned a man carrying electrical conduit, such as plaintiff carried on an earlier trip up the left-hand stairway, to use the right-hand stairway. There was ample evidence that plaintiff knew that the building where the accident occurred was identical to other buildings already constructed and that each building had two identical stairways. There was also considerable evidence that the right-hand stairway was completed for use at the time of the accident. One of defendant's employees testified:

"Q. And at the time of this accident what was the condition of the other stairway that was just about forty feet away from this area?

"A. It was completed to the second floor.

"Q. In other words, forty feet away from where this accident happened there was an open completed stairway.

"A. Yes.

\* \* \* \* \*

"Q. But the one on the other side of the building had been completely done.

"A. Yes."

Another of defendant's employees, called by plaintiff as his witness, testified on cross-examination as follows:

"Q. By the way, was there other stairways available for the use of the trades?

"A. There was a stair that was completed to the second floor.

"Q. And you had done that work earlier.

"A. Right.

"Q. So there was a complete stairway that did not have anything on it at all.

"A. Correct.

\*     \*     \*     \*     \*

"Q. There was nothing on the other stairway, though, the one down the line.

"A. The stairway was clear."

Plaintiff himself testified:

"Q. In any event, there was nothing that would prevent you from walking that forty feet and picking up your material and going to the second floor with the other stairway, was there?

"A. Why go the forty feet and come back to the same territory?"

While defendant's employees could not testify specifically that they told plaintiff to use the other completed stairway, they did testify they had warned everyone they saw using the uncompleted stairway to use the other stairway. In addition, there was ample evidence that the other stairway offered plaintiff a reasonable alternative. Under the evidence, it is clear the jury could find that plaintiff knew of the alternative safer route.

Since the evidence in this case does not support the contention that, as a matter of law, plaintiff was unaware of the danger of lumber falling from the construction under which he walked, and since the jury could reasonably find that plaintiff knew of an

alternative safer route, the defense of assumption of the risk was properly submitted to the jury.

2. On the day the trial commenced, defendant moved to amend its answer to include the defense of assumption of the risk. Plaintiff argues that the trial court erred in allowing the amendment. Under Rule 15.01, Rules of Civil Procedure, a party may amend his pleading at any time by leave of the court, and leave shall be freely granted when justice so requires. The granting or denial of a motion for amendment of the pleadings is a matter lying in the sound discretion of the trial court, and its action will not be reversed except for a clear abuse of discretion. Dale v. Pushor, 246 Minn. 254, 75 N. W. 2d 595 (1956).

It is plaintiff's contention that the granting of the motion to amend was an abuse of discretion because plaintiff was deprived of preparation on the law of assumption of the risk, including framing of requested instructions. The jury was instructed 4 days after the amendment. It appears that plaintiff had sufficient time to study and draft proposed instructions on the doctrine of assumption of the risk. We therefore conclude that plaintiff was not prejudiced by the amendment.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.