Edwin **GILBERTSON**, Appellee,

v.

**TRYCO MANUFACTURING COMPANY, INC.**, Appellant.

No. 73–1615.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 16, 1974.

Decided Feb. 25, 1974.

Ludwig B. Gartner, Jr., Faegre & Benson, Minneapolis, Minn., for appellant.

Douglas E. Schmidt, Mott, Grose & Von Holtum, Worthington, Minn., for appellee.

Before LAY, STEPHENSON and WEBSTER, Circuit Judges.

LAY, Circuit Judge.

The defendant, Tryco Manufacturing Company, Inc. (Tryco), manufactures an applicator machine used for spraying fertilizer and agricultural chemicals. Plaintiff, Edwin Gilbertson, an employee of the Lucan Grain and Fuel Co., Inc., was operating the machine when a hose clamp came loose resulting in aqua-ammonia, a liquid nitrogen fertilizer, being sprayed on plaintiff's neck and face, causing burns and a permanent impairment of vision in his right eye. Plaintiff brought suit under the doctrine of strict liability for a design defect. Special interrogatories were submitted to the jury and under the Minnesota comparative negligence statute the jury apportioned fault 65 percent to the defendant and 35 percent to the plaintiff. The jury returned a verdict for $60,712.87, and the trial court entered judgment on the verdict in favor of the plaintiff for $39,712.87. The trial court overruled defendant's motion for a new trial and alternative motion for judgment notwithstanding the verdict. Defendant appeals.

Defendant urges several grounds for reversal: (1) that the evidence was insufficient to prove the machine was defective; (2) that plaintiff was aware of the claimed defect; (3) that the trial court erred in defining contributory negligence in the same terms as assumption of risk; (4) that the trial court erred in submitting both contributory negligence and assumption of risk to the jury in the same special interrogatory; and (5) that the trial court erred in refusing to order a remittitur because the award of $60,000 was excessive and not supported by the evidence. For the rea-

sons discussed below, we affirm the judgment of the district court.

The accident occurred in Minnesota and the law of that state governs. We find it necessary to give extensive discussion only to the defendant's contention that the trial court erred in submitting contributory negligence and assumption of risk in one special interrogatory. We find no merit in the other issues raised.

The special interrogatories in question are as follows:

5. Was the plaintiff, Edwin Gilbertson, contributorily negligent or did he assume the risk?

6. If the answer to question No. 5 is yes, answer the following question: Was Edwin Gilbertson's contributory negligence or fault or assumption of the risk a direct or proximate cause of the accident and the injuries he sustained?

The jury answered "yes" to both of the above questions. The defendant urges that the verdict is perverse, since under controlling Minnesota law assumption of risk and contributory negligence are distinct defenses and should have been submitted separately to the jury. After the jury verdict was in the trial court admitted its error in combining the two defenses in the same interrogatory. However, in its order overruling the motion for judgment n. o. v. the trial court found that the verdict should still stand since upon review of the record it found no evidence to support the submission of assumption of risk to the jury and its submission was, therefore, not prejudicial to the defendant. It is this ruling which is attacked here.

Minnesota law governing assumption of risk and contributory negligence has undergone substantial change in recent years. Prior to Springrose v. Willmore, 292 Minn. 23, 192 N.W.2d 826 (1971), assumption of risk was treated as a defense separate and distinct from that of contributory negligence and where a plaintiff was guilty of assumption of risk he was completely barred from re-

covery. *See* Moteberg v. Johnson, 210 N.W.2d 27 (Minn.1973); Parness v. Economics Laboratory, Inc., 284 Minn. 381, 170 N.W.2d 554 (1969). Upon passage of its comparative negligence statute (Minn.Stat. § 604.01 subd. 1) and in response to the New Jersey decision of Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 155 A.2d 90 (1959), the Minnesota court in *Springrose* held that "an injured plaintiff's involuntary or otherwise not unreasonable assumption of risk should not exonerate a defendant from his causal negligence." *Springrose, supra* at 827, of 192 N.W.2d. Thus, the Minnesota Supreme Court now holds, where the defendant has a duty to exercise ordinary care, that plaintiff's "secondary, express or implied," assumption of risk, as distinguished from "primary" assumption of risk,[1] becomes part of the defense of contributory negligence.[2] However, the new rule as stated in *Springrose* was to be applied prospectively so that it only governs causes of action arising after the date of that decision, *i. e.,* December 10, 1971. *See* Gottskalkson v. Canby, 296 Minn. 212, 207 N.W.2d 361 (1973). The accident in the present case occurred on April 17, 1968, and therefore Minnesota law as it existed before *Springrose* is applicable. As indicated, earlier Minnesota case law treated plaintiff's assumption of risk as a complete bar to recovery. Thus, we are faced with the singular question of whether there existed any evidence of plaintiff's assumption of risk.

Under Minnesota law prior to *Springrose,* the Minnesota jury instructions on assumption of risk read:

Assumption of risk is voluntarily placing oneself in a position to chance known hazards. To find that a person assumed the risk, you must find:

1. That he had knowledge of the risk.

2. That he appreciated the risk, and

3. That he had a choice to avoid the risk or chance it and voluntarily chose to chance it.

If a person has assumed the risk, he cannot recover for any injury or damage sustained by him.

Assumption of risk should be distinguished from contributory negligence. Assumption of risk does not involve the failure to use reasonable care. A person who assumes the risk is one who voluntarily chooses to chance a danger which is known and appreciated. Contributory negligence does involve a failure to use reasonable care. A person who is contributorily negligent is one who has failed to use that care which a reasonable person would use under like circumstances.

Minnesota Jury Instruction Guides, Instructions 135 and 136.

The fundamental difference under Minnesota law between assumption of risk and contributory negligence, at least prior to *Springrose,* is reflected in Coenen v. Buckman Building Corp., 278 Minn. 193, 153 N.W.2d 329 (1967). The Minnesota Supreme Court there observed in discussing the defense of assumption of risk:

The knowledge required is actual knowledge as distinguished from constructive notice or knowledge. The mere fact that plaintiff would, in the exercise of ordinary care, have known or appreciated the danger is not sufficient. Where the facts are such that plaintiff must have had knowledge,

---

1. Presumably if a plaintiff is guilty of "primary" assumption of risk defendant owes no duty. *See* Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 155 A.2d 90 (1959). Since these terms need not be defined for resolution of this case we prefer leaving their further definition to the Minnesota courts.

2. The Minnesota Supreme Court suggests, however, that there may still exist occasions where the two defenses may be submitted by separate interrogatories, subject to "a single apportionment verdict." *Springrose, supra* at 828.

the situation is equivalent to actual knowledge; but where it merely appears that he should or could have discovered the danger, the defense is contributory negligence and not assumption of risk. 65A C.J.S. Negligence, § 174(3).

We said in Schrader v. Kriesel, 232 Minn. 238, 247, 45 N.W.2d 395, 400:

" * * * Notice or knowledge and appreciation of the danger are indispensable to an assumption of risk. City of Winona v. Botzet (8 Cir.) 169 F. 321, 23 LRA (N.S.) 204. Assumption of risk involves comprehension that a peril is to be encountered and a willingness to encounter it. It differs from contributory negligence, based on carelessness, by being an exercise of intelligent choice."

*Coenen, supra* at 338.

In the present case, the plaintiff's expert, Dr. Schertz, an agricultural engineering professor at the University of Minnesota, opined that the hose clamp was defectively designed because of its inherent loosening characteristics; that "swage-fittings" should have been used to avoid spontaneous loosening of the hose; that there should have been pressure relief valves incorporated into the system; and that a two-way shut-off valve was inadequate since it allowed pressure build-up during filling operations. He expressed his opinion that the hose came off because of excessive pressure and the loose clamp. This testimony was sufficient to submit the issue of defective design to the jury.

The evidence showed that the plaintiff was the principal operator of the applicator during 1967. He was aware of the "caution" signs on the machine. He had previously been instructed by his employer to make sure the hose clamps were properly tightened. He knew that the applicator operated under pressure and that aqua-ammonia was caustic.

Plaintiff readied the applicator for use in the spring of 1968. He greased the machine and checked all of the hoses and clamps. Two to three days before the accident he tightened the clamps with a screwdriver. Thereafter, he used the applicator without incident on two and possibly three occasions prior to the accident. On the day of the accident plaintiff did not recheck the clamps. After the accident, the hose was replaced on the nipple, the clamp was tightened, and the applicator was continued in use without further incident.

Defendant's expert witness, John Carroll, a consulting engineer, testified that if the hose clamp had been tightened by plaintiff, as he had testified, the clamp would not have loosened by the time of the accident.

On the strength of plaintiff's knowledge of the risk, his knowledge that the clamps must be regularly tightened, and the testimony of defendant's expert, defendant urges that there was sufficient evidence from which the jury could have determined that the plaintiff assumed the risk. We disagree. We conclude that this evidence raises only the question whether plaintiff should or could have discovered the danger and whether under the circumstances he failed to fully appreciate the peril. The evidence falls short of proof that plaintiff knew of the existing peril, to-wit, the existence of a loose clamp, and made a voluntary choice to willingly operate the machine knowing of the actual danger.

Defendant urges that the recently decided case of Schroeder v. Jesco, Inc., 296 Minn. 447, 209 N.W.2d 414 (1973), rejects this conclusion. In *Schroeder*, tried under the same pre-*Springrose* Minnesota law applicable here, plaintiff was injured while ascending a stairway of a newly constructed building when struck on the head by a wooden beam that had been knocked into the stairway by the negligence of another. Plaintiff urged that assumption of risk was not applicable since he had no knowledge that the particular timber beam would fall upon him. The Supreme Court af-

**962**

firmed the jury verdict for the defendant and said:

> It is inconceivable that reasonable men would have to conclude that plaintiff, an experienced construction worker who knew that lumber would sometimes be dropped from one floor to another at construction sites, did not know and appreciate the risk of falling objects inherent in working under construction in progress.

*Schroeder, supra* at 418.

Defendant urges here that plaintiff, being an experienced farmhand, was equally aware of the risk of being sprayed with aqua-ammonia if a hose clamp came loose. Defendant contends, in this regard, that the evidence was sufficient to submit to the jury defendant's theory that plaintiff nevertheless operated the applicator without first checking the clamp. We think the two situations distinguishable. In *Schroeder,* the risk was fully known, it existed as a present fact, based on actual knowledge of past occurrences. The situation presented is no different than a person voluntarily walking across a rifle range during target practice and then claiming he did not know of the projection of the specific bullet that hit him. In the present case, even assuming that the plaintiff did not first tighten the clamp as defendant's expert suggests, there was no showing of plaintiff's knowledge that the clamp was in fact loose. There is no contradiction in the record of plaintiff's claim that he had checked the tightness of each and every hose clamp on the machine two to three days prior to the accident by inserting a screwdriver and turning it as hard as he could. In the meantime, the machine was used only twice, once for two to three hours and a second time for a half-day. Even defendant's representative testified that the cautionary instruction to "regularly tighten" the clamps did not require "frequent" tightening of the clamps or that the tightening be done before each use. Thus, at best the evidence shows only that there was a possibility that the clamp on the hose might be loose. This was evidence of a risk from which danger might possibly flow rather than of a risk of actual danger. Under these circumstances we think the evidence falls into the broader ambit of contributory negligence, *i. e.,* whether a plaintiff knowing of a risk from which danger might possibly flow exercised due care under the circumstances.

Judgment affirmed.