The motion for stay is granted until further order of the court.

**Bryan D. PITTS, Appellant,**

v.

**ELECTRO–STATIC FINISHING, INC., Appellee.**

No. 79–1106.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1979.

Decided Oct. 23, 1979.

**800**

Michael A. Kampmeyer, Kampmeyer, De-Courcy, Fetsch & Kronschnabel, St. Paul, Minn., for appellant.

James T. Martin, Gislason & Martin, Edina, Minn., for appellee.

Before BRIGHT, Circuit Judge, MARKEY, Chief Judge,* and HENLEY, Circuit Judge.

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. As far as plaintiff's case was concerned, the matter of contributory negligence was governed by Minn.Stat.Ann. § 604.01 (1969) (amended 1978), as it was written prior to the effective date of amendatory legislation adopted in 1978. Laws, 1978, c. 738. As of the time with which we are concerned contributory negligence or fault was a complete defense to the action if the contributory negligence was "equal to or greater than" the negligence on fault of the defendant. However, if plaintiff was allowed to recover in spite of his own negligence, his award had to be diminished in

HENLEY, Circuit Judge.

This is a personal injury suit that reaches us from the United States District Court for the District of Minnesota following two jury trials. Chief District Judge Paul Benson of North Dakota, sitting by designation, presided over the first trial, and District Judge Donald D. Alsop of Minnesota presided over the second trial. The jurisdiction of the district court was predicated on diversity of citizenship with the requisite amount in controversy being involved. 28 U.S.C. § 1332(a) (1976).

Plaintiff, an employee of a crane manufacturer, was injured on the premises of the defendant on May 22, 1972 while engaged in the attempted repair of an electrically powered crane that was used, along with other cranes, in the defendant's business operation.

Plaintiff received workmen's compensation through his employer but brought this action against the defendant alleging that the defendant was a third party tortfeasor. It was the theory of the plaintiff that his injuries were proximately caused by negligence on the part of the defendant, and that the defendant was liable to him for his injuries.

The defendant denied liability and took issue as to damages. The position of the defendant was that it was not guilty of any negligence and that the plaintiff was guilty of contributory negligence [1] and had volun-

proportion to plaintiff's own negligence. Since April 15, 1978 contributory negligence or fault is not a complete defense unless it in fact exceeds the negligence of the defendant.

If a negligence case is tried in a Minnesota state court, and if contributory negligence is an issue, the case may be submitted to the jury on special interrogatories and must be so submitted at the request of either side. The jury must apportion negligence between plaintiff and defendant and must make a finding of gross damages. The trial judge then makes appropriate adjustments. Minn.Stat.Ann. § 604.01(1) (1978) (amending Minn.Stat. § 604.-01 (1969)).

tarily assumed the risk of injury.[2]

In both trials of the case interrogatories were used. In the first trial the jury assessed damages at $150,000.00 but charged plaintiff with contributory negligence to the extent of 20%. This reduced the award to $120,000.00.[3]

The second jury found that the defendant had indeed been negligent but did not find that the defendant's negligence was the direct or proximate cause of plaintiff's injury. The failure of the jury to find "causal negligence" on the part of the defendant was fatal to the claim of the plaintiff and rendered it unnecessary for the jury to answer other questions that had been put to it, including a question as to the contributory negligence of the plaintiff and the question relating to the gross amount of damages sustained by plaintiff as a result of his injuries.

Returning for a moment to the first trial—after the jury's verdict had been returned the defendant moved for judgment notwithstanding the verdict, or, alternatively, for a new trial. Fed.R.Civ.P. 50(b), (c) and (d). Judge Benson denied the motion for judgment n. o. v. but granted the motion for a new trial.

Following the second trial, plaintiff moved for a new trial; the motion was denied and final judgment in favor of the defendant was entered. This appeal followed.[4]

As to Judge Benson's order granting the defendant a new trial plaintiff contends that the action of the trial judge amounted to error and abuse of discretion.

With particular regard to Judge Alsop's order plaintiff contends that the trial judge erred in refusing to admit a particular piece of evidentiary material and erred in refusing to instruct the jury on the doctrine of res ipsa loquitur that plaintiff had invoked, and plaintiff contends finally that he should be awarded a new trial "in the interest of justice."

Both sides recognize that the substantive rights of the parties are governed by Minnesota law. We may observe, however, that in a diversity case in federal court it is sometimes hard to differentiate between what is substantive and governed by state law and what is procedural and governed by federal law. Fortunately, in a good many cases it really makes no difference which standard is used; the result will be the same under either standard.

The accident involved in this case was an unusual if not a freakish one.

The defendant, Electro-Static Finishing, Inc., operates a manufacturing plant in the City of Minneapolis. In its operation it makes use of three electrically powered cranes, which may be called Crane 1, Crane 2 and Crane 3. These cranes move by electric power along an overhead runway; all of them are on the same runway, one behind the other. Crane 2 was the middle machine being located between Crane 1 and Crane 3. When a crane is in need of repair, it is moved along the runway to a service balcony from which it is accessible to the mechanic who is doing the repair work. If Crane 2 is in need of repair, both it and Crane 1 have to be moved along the runway to the service balcony. Presumably if

---

**2.** The term "assumption of risk" has two meanings in Minnesota. In its primary sense it means simply that the defendant owed no duty of care toward the plaintiff and therefore could not be guilty of negligence with respect to him. In its "secondary" sense assumption of risk means simply that the plaintiff was guilty of contributory negligence or fault as mentioned in note 1, *supra*. *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826 (1971); H. Woods, Comparative Fault (1978), appendix, p. 502.

**3.** *See* note 1, *supra*.

**4.** Judge Benson's order granting a new trial originally was not appealable when entered, but it became subject to review here after Judge Alsop refused to grant plaintiff's motion for a new trial and caused final judgment to be entered. 11 C. Wright & A. Miller, Federal Practice & Procedure, § 2818, pp. 113–115. And plaintiff complains about both of the post-trial actions that have been described. Plaintiff, naturally, would like for us to reinstate the original judgment in his favor and direct that judgment be entered thereon. His request for a second new trial would appear to be an alternative one.

Crane 3 has to be repaired, all three cranes have to be moved over the balcony.

There is a central electrical control whereby power to all three cranes can be cut off. Additionally, each individual crane has a switch whereby the power to it can be cut off without affecting the ability of the other two cranes to operate.

Unknown to anyone involved, the individual switch on Crane 1 was defective in that it could malfunction in such a manner that the crane could receive power even though the individual switch on the crane was in the "off" position.

On the occasion of the accident Crane 2 was in need of repair. Plaintiff's employer, John H. Hearding, a crane manufacturer, was contacted by the defendant's manager or superintendent for the purpose of having Crane 2 repaired, and plaintiff, Pitts, a comparatively inexperienced employee of Hearding, was dispatched to do the work.

Plaintiff positioned Cranes 1 and 2 over the repair balcony and turned their individual power switches to the "off" position. He did not cut off the power to all three cranes by pulling the central control switch although he could have done so. Plaintiff was unaware of the allegedly defective condition of the switch controlling Crane 1, and he had no idea that that crane could go into motion while the individual switch was cut off.

While the plaintiff was in close proximity to Crane 2, Crane 1 suddenly "came to life" and ran into Crane 2 which was knocked into plaintiff who was thereby caused to sustained serious and permanent injuries.

While plaintiff was painfully and permanently injured, and while he has been required to undergo major surgery, he is not totally disabled. In his complaint he sought a recovery of $90,000.00, and in his closing argument in the first trial counsel for plaintiff told the jury that it should find that all of the negligence in the case was that of the defendant, and that it should assess plaintiff's damages at a figure in the neighborhood of $90,000.00. As has been seen, the jury assessed plaintiff's damages at

$150,000.00 gross but charged him with 20% of the fault. The remaining net figure, $120,000.00, is $30,000.00 in excess of what plaintiff asked for and what his lawyer suggested to the jury would be appropriate.

In dealing with the defendant's post-trial motions Judge Benson filed a full opinion. As to the motion for judgment n. o. v. the Judge expressed the view that plaintiff had made a submissible, albeit a very weak, case. The court observed that the only evidence supporting plaintiff's claim consisted of his uncorroborated testimony to the effect that two unidentified crane operators employed by defendant had told him after the accident that Crane 1 had moved in the same manner as it did on the day of the accident on at least one prior occasion, and the testimony of plaintiff that he had been requested by one of the defendant's managing officers not to disconnect all three cranes at the central control switch because it was desired to keep Crane 3 in use while Crane 2 was being repaired and while Crane 1 was inoperable due to its position in relation to Crane 2.

However, when the trial judge came to consider the alternative motion of the defendant for a new trial, he found that on the liability issues the verdict was clearly against the preponderance of the evidence, and that the amount of the verdict was such as to suggest passion and prejudice on the part of the jurors.

In his effort to reverse Judge Benson plaintiff contends that in view of the provisions of the Minnesota comparative negligence statute the district court in passing on the defendant's motion for a new trial should have applied some "state standard" and erroneously applied an impermissible "federal standard."

■ That contention is devoid of merit. This court has recently held that in a diversity case the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law. *Brown v. Royalty*, 535 F.2d 1024, 1027 (8th Cir. 1976). That is the better rule and the one followed by most federal courts. 11 C. Wright & A. Miller, *supra*, § 2802, pp. 29–31, and cases cited.

The federal rule is that the question of granting or denying of a motion for a new trial following a jury verdict addresses itself to the judicial discretion of the trial judge, and his decision will not be reversed by this court in the absence of a showing of abuse of discretion. *Voegeli v. Lewis*, 568 F.2d 89, 94–95 (8th Cir. 1977); *Brown v. Royalty, supra*, 535 F.2d at 1027. And, we observe that both of those cases cited the earlier case of *Sanden v. Mayo Clinic*, 495 F.2d 221 (8th Cir. 1974), which was a diversity case that arose and was tried in Minnesota, with Chief Judge Devitt being the presiding judge.

Actually, we see no substantial difference between the "federal standard" and the "Minnesota standard." In Minnesota the rule is that motions for new trials are addressed to the sound discretion of the trial court. *See, e. g., Bowman v. Pamida, Inc.*, 261 N.W.2d 594 (Minn.1977); *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672 (Minn.1977); *Kalpin v. Helgeson*, 254 N.W.2d 378 (Minn.1977); *Goblirsch v. Western Land Roller Co.*, 310 Minn. 471, 246 N.W.2d 687 (1976). *See also* Minn.Rules Civ.P. 59, 27A Minn.Stat.Ann. (1968).

This, of course, does not mean that in a diversity case in which the negligence law of Minnesota is governing as to substantive rights a plaintiff is not entitled to the full benefit of the state's comparative negligence statute and does not mean that a federal trial judge may substitute his own judgment for that of the jury as to apportionment of fault or as to amount of damages sustained. But those principles have nothing to do with the standards to be applied by a trial court or by an appellate court in connection with motions for new trials.

In this case we are satisfied from our consideration that Judge Benson did not err or abuse his discretion in granting the defendant's motion for a new trial, and plaintiff's contentions to the contrary are rejected.

Turning now to plaintiff's complaints about the action of Judge Alsop in denying plaintiff's motion for a new trial following the jury findings in favor of the defendant as a result of the second trial, we note that the trial judge dealt with the motion in a succinct but unpublished opinion, *Pitts v. Electro-Static Finishing, Inc.*, No. 4–73 Civ. 595, D.Minn., filed Nov. 24, 1978.

It is apparent from that opinion that the district judge did not consider the motion to be substantial and that he probably would have denied the motion out of hand, save for Judge Benson's ruling following the first trial. And Judge Alsop recognized that a lay plaintiff might have a good deal of difficulty in understanding the situation that existed in this case and the fact that one federal judge set aside a jury verdict in his favor, that a second jury reached an opposite result, and that a second federal judge might permit the second jury verdict to stand. However, Judge Alsop concluded his opinion by saying:

Nonetheless, in the final analysis, this court must take the matter as if it were before it on a clean slate. This court's determination of the merits of the pending motion cannot be influenced by the occasion of the first trial. This court must and does accept the determination of the granting of a new trial in the first instance as appropriate under the circumstances. Addressing the pending motion by the same standard, the court deems the granting of a new trial in this instance as totally inappropriate.

At an extremely late stage of the trial plaintiff for the purpose of proving negligence offered formally to introduce into evidence a document or documents setting out safety standards in the crane industry which his attorney had used at will in the cross-examination of the defendant's expert witness, Hearding, the former employer of plaintiff.[5] The trial court refused

---

5. The document that counsel used in the course of the trial and which he eventually offered in evidence was a copy of standards for overhead

and gantry cranes that appear to have been promulgated by the American National Standards Institute (ANSI) in 1967 and which were

to admit the proffered material into evidence. The trial court also declined to grant an instruction on the doctrine of res ipsa loquitur that had been requested by the plaintiff. Plaintiff, as indicated, complains about both of those actions.

A short and perhaps sufficient answer to those complaints is that the finding of the second jury that the defendant was in fact guilty of negligence removed any prejudice to the plaintiff that might have resulted from the rulings of the trial judge now under consideration.

Aside from that, from our reading of the colloquy between court and counsel about the proffered documents, it appears to us that Judge Alsop felt that the offer of the material was inexcusably belated, and that no proper foundation for the introduction of either of the documents had been laid. Moreover, as has been observed, counsel made substantial use of the document setting out the industry standards. Additionally, the trial judge in his instructions to the jury told the jurors that they would recall testimony about industry standards, and that a violation of such standards by the defendant would be prima facie evidence of negligence. In all of the circumstances shown by the record, we agree with defense counsel that the exclusion of the materials that have been described was well within the discretion of the district court, including the latitude allowed by Rule 403 of the Federal Rules of Evidence.

■■ As to the refusal of the trial judge to give the requested "res ipsa" instruction, we will assume that the request that was refused correctly set out the doctrine of res ipsa loquitur as it is understood in Minnesota. Whether in a given case the evidence warrants the giving of such an instruction

to a Minnesota jury presents a question of state law. After hearing four days of testimony, Judge Alsop evidently felt that the giving of the requested instruction was not warranted. His opinion as to the governing law of Minnesota in this area is entitled to great weight, and we are not inclined to disturb it, particularly in view of what would appear to have been the nonprejudicial effect of the district court's action.

■ Finally, we must consider the contention of plaintiff that Judge Alsop should have awarded him a new trial in the general interests of justice. We concede to the plaintiff that under Fed.R.Civ.P. 59 a federal district court may grant a new trial on that basis if it is satisfied that a jury verdict will work a substantial injustice if permitted to stand. 11 C. Wright & A. Miller, *supra*, §§ 2803, 2805. *See also Simpson v. Skelly Oil Co.*, 371 F.2d 563 (8th Cir. 1967); *Altrichter v. Shell Oil Co.*, 263 F.2d 377 (8th Cir. 1959); *Diffenderfer v. Heublein, Inc.*, 285 F.Supp. 9, 15 (D.Minn.1968), *aff'd*, 412 F.2d 184 (8th Cir. 1969).

However, we are satisfied that the claim of the plaintiff in this case that "the ends of justice," apart from anything else, require that he be given a new trial is without merit. This case has been contested hotly ever since its outset in 1973; it has been the subject of two plenary trials before two different juries, with two different judges presiding. At the end of the first trial plaintiff was perhaps fortunate to withstand successfully the motion for judgment n. o. v. that the defendant had filed. It is pure speculation to say that a third trial of the case would result favorably to the plaintiff, or that it would be free from error.

adopted, apparently in 1974, by the federal Occupational Safety & Health Administration, *see* 29 CFR §§ 1910.179 and 1910.189 (1978). The document identified as Plaintiff's Exhibit 51 (PX–51) was not offered until after all of the oral testimony in the case had been taken, and the copy of the document that counsel offered bore a 1973 copyright date whereas plaintiff had been injured in 1972. On the final day of the trial and after a recess over a weekend, counsel for plaintiff offered in lieu of PX–51

another set of standards that had been issued by the American Society of Mechanical Engineers. Counsel for plaintiff contended that the second document was the equivalent of the first. Both documents were of substantial length, and on the last day of a long trial and under obvious pressure to wind up the case the district judge simply did not have time to sit down and compare the two documents, and he declined to undertake to do so.

Any particular piece of litigation must some day come to an end. We can imagine that Judge Alsop in November, 1978 felt that the time had come to terminate this case finally. We agree.

The judgment of the district court is affirmed.