**Vera L. WAGNER, et al., Respondents,**

v.

**THOMAS J. OBERT ENTERPRISES, Petitioner, Appellant.**

**No. C1–85–1645.**

Supreme Court of Minnesota.

Nov. 21, 1986.

William Fishman, Minneapolis, for appellant.

Austin D. Ditzler, Minneapolis, for respondents.

SIMONETT, Justice.

In this case, involving a fall on a roller-skating rink, we hold the trial court properly submitted primary assumption of risk to the jury and, further, that the trial court did not prejudicially err in admitting certain evidence. We reverse the court of appeals' contrary rulings.

On April 12, 1982, plaintiff-respondent Vera L. Wagner, age 57, fell while roller-skating at the skating rink of defendant-appellant Thomas J. Obert Enterprises. The rink itself is a large oval-shaped hardwood floor surrounded by a wall 3½ feet high. There are three exits or openings in the wall, each 6 feet wide, for skaters to pass between the rink and the carpeted lobby area of the building. The rink is one-half inch higher than the lobby floor; this difference in elevation, at each of the rink exits, is covered by a 12-inch wide metal strip which forms a ramp between the two floor levels.

Vera Wagner testified she was leaving the skating rink at one of the exits; that she wanted to step over the metal threshold but the lighting was too dark for her to see it; that she wanted to put her hand on the edge of the rink wall for support but she could not reach the wall because surrounded by youngsters; that she stepped on the metal threshold and fell; and that she then observed the metal ramp had a concave, dished contour. On the other hand, defendant introduced evidence which, if believed, would have tended to refute claims of improper maintenance and supervision.

In addition, defendant presented evidence that the accident happened differently. The skating rink manager testified that after the accident Vera Wagner told him she had simply lost her balance while trying to avoid a child. This information was also in an accident report form completed by the manager, which was received in evidence. Further, Dr. Carl Caspers, the orthopedist who treated plaintiff at the hospital immediately after the accident, testified Mrs. Wagner had told him she fell while concerned about a child. The doctor's hospital notes containing this information were also received in evidence. At the beginning of the trial, plaintiffs moved *in limine* to exclude Dr. Caspers' hospital notes and photographs of "Skate At Your Own Risk" signs. The motion was denied, and the exhibits were later received in evidence. At the close of the testimony, the jury was instructed on both primary and secondary assumption of risk over plaintiffs' objection that only secondary assumption of risk should be submitted.

The jury found defendant not negligent and Vera Wagner 100% negligent. The trial court denied plaintiffs' post-trial motions for judgment notwithstanding the verdict or, in the alternative, for a new trial, but the court of appeals reversed, granting a new trial. *Wagner v. Thomas J. Obert Enterprises,* 384 N.W.2d 477 (Minn.App.1986). We granted defendant's petition for further review.

The issues before us are whether the trial court erred by submitting primary assumption of risk to the jury and by admitting the doctor's notes, the accident report, and the photographs of the warning signs.

## I.

Primary assumption of risk applies "only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. As to these risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent." *Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974). On the other hand, secondary assumption of risk "is an affirmative defense to an established breach of duty which may only be raised when the plaintiff has voluntarily chosen to encounter a known and appreciated danger created by the negligence of the defendant." *Id.* at 43, 216 N.W.2d at 127. Secondary assumption of risk is a form of contributory negligence. *Springrose v. Willmore,* 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971).

One of the few instances where primary assumption of risk applies is in cases involving patrons of inherently dangerous sporting events, *Springrose,* 292 Minn. at 24, 192 N.W.2d at 827, such as skating. In *Moe v. Steenberg,* 275 Minn. 448, 450–51, 147 N.W.2d 587, 589 (1966), an ice skating case, we quoted with approval a Missouri court's statement that a patron of a roller-skating rink assumes the ordinary, necessary, obvious risks that are incidental to roller-skating, including the risk of falling and colliding with other skaters due to lack of skill or clumsiness. *Id., citing Schamel v. St. Louis Arena Corp.,* 324 S.W.2d 375, 378 (Mo.App.1959). Cases from other jurisdictions are in accord. *See, e.g., Smollett v. Skating Development Corp.,* 793 F.2d 547, 548–49 (3rd Cir.1986) (skater who skated onto carpeted area to avoid a child assumed the risk of falling).

■ The doctrine of primary assumption of risk does not, however, relieve the rink management of its duty to safely supervise skating activities or to maintain the premises in a safe condition. Negligent maintenance and supervision of a skating rink are not inherent risks of the sport itself. *See, e.g., Roll 'R' Way Rinks, Inc. v. Smith,* 218 Va. 321, 237 S.E.2d 157 (1977) (roller-skater fell while attempting to cross steel transition ramp from rink floor to carpet; jury could find rink owner negligent in not making a permanent repair of the ramp plate thereby leaving the premises unsafe); *Johnson v. Amphitheatre Corp.,* 206 Minn. 282, 288 N.W. 386 (1939) (when roller-skating patron was struck by boys skating unauthorized in the lobby, accident was due not to inherent risk of roller-skating but to management's negligent supervision of its premises).

■ Here there were two versions of how plaintiff's accident happened. If the accident happened simply because plaintiff, concerned about other skaters, lost her balance and fell while exiting, defendant owed no duty to prevent her fall, or, to put it another way, plaintiff had assumed a primary risk of roller-skating. On the other hand, if the fall occurred as plaintiff testified at trial, defendant owed her a duty of care which was breached and this negligence would be compared with plaintiff's contributory negligence, if any. Which legal principles would govern depended on which version of the facts was found by the jury.

■ Plaintiffs argue that even if Vera Wagner had fallen to avoid a child, her fall "could have been" attributable to negligent supervision, not an inherent risk of roller-skating. Yet, one can also say her fall "could have been" attributable to an inability to avoid another skater who was on a properly supervised rink. Not every collision or near-collision with another skater signifies poor supervision by the management. Simply because the existence of primary assumption of risk depended on resolution of a fact issue did not mean that primary assumption of risk should not have been submitted to the jury; instead, quite the contrary.

■ The court of appeals thought that giving instructions on both primary and secondary assumption of risk was confusing to the jury. But the trial court's instructions properly treated the two concepts as separate, legal doctrines, and it

was for the jury to determine from the conflicting facts which kind of risk, if either, Vera Wagner assumed. We might note in passing, however, some doubt whether secondary assumption of risk had any application to the facts of this case. Both parties, however, asked for the instruction.

Although no one raises the point, we might comment on the manner in which the two kinds of assumption of risk were submitted to the jury. The first special verdict question read, "Was the Defendant negligent on April 12, 1982?" With respect to the instruction on primary assumption of risk, the jury was then told, "[I]f you find that the accident on April 12, 1982 arose from a risk inherent in the activity of skating and well-known to plaintiff Vera L. Wagner, then you must answer the question 'No.'" The jury was also instructed on defendant's duty of care to keep its premises safe. Thus the first special verdict question was required to do double duty, i.e., if the jury did not find Mrs. Wagner's fall due to an inherent skating risk, it could still answer the question "no" if it found defendant had used reasonable care to keep its premises safe. The jury answered the question "No," and under the evidence could have done so. Another way of submitting the case might have been to have the first question read, "Did plaintiff assume an inherent risk of roller-skating in her accident of April 12, 1982?" The jury could then be told if it answered the question "yes," it need go no further; if it answered "no," it should proceed with the remaining questions, beginning with, "Was the defendant negligent?"

**II.**

Plaintiffs next contend they are entitled to a new trial because of erroneous trial court evidentiary rulings. We find no reversible error.

1. After her fall, Vera Wagner was taken to the hospital where she was treated by Dr. Carl Caspers. In the hospital admission record, Dr. Caspers made the notation, "The patient stated that she was at a roller rink with her grandchildren. She had her skates on and was standing at the rink. She became concerned about a child that was on the track and she lost her balance and fell * * *." At the beginning of the trial, plaintiffs, who did not intend to call Dr. Caspers as a witness, moved *in limine* to exclude this portion of the hospital record as inadmissible hearsay. Defendant argued the doctor's notes were admissible as a business record under Minn.R.Evid. 803, subd. 6, and indicated it intended to call Dr. Caspers as a witness if the court ruled otherwise. The trial court ruled the doctor's notes would be admissible as an admission by the party plaintiff. Plaintiffs then elected to call Dr. Caspers as their own witness, and, on cross-examination, defense counsel elicited from Dr. Caspers, who read from his hospital notes, what Mrs. Wagner had told him about how the accident had happened. After Dr. Caspers testified, both plaintiffs and defendant offered the hospital records in evidence, and they were received. Plaintiffs' offer of the hospital records does not delete that part consisting of Dr. Caspers' notes about the accident. Nevertheless, we believe, in view of the prior ruling on plaintiff's motion *in limine*, that plaintiffs were not waiving their objection to the doctor's notes.

■ In *Brown v. St. Paul City Railway Co.*, 241 Minn. 15, 26, 62 N.W.2d 688, 696 (1954), we held that a patient's self-serving statements contained in a hospital record are not admissible to prove how an accident happened when the record is offered by the patient. A patient cannot give a favorable version of the accident to the attending doctor and then at trial bolster her case with the doctor's notes of that self-serving statement. We expressly declined in *Brown*, however, to decide whether records could be used for impeachment or some other purpose. Thereafter, in *Lindstrom v. Yellow Taxi Co. of Minneapolis*, 298 Minn. 224, 214 N.W.2d 672 (1974), we held the attending doctor's hospital notes on the cause of an accident, when offered by the defendant, are not admissible under the business records exception as either sub-

stantive or impeachment evidence, at least "when the treating physicians are unavailable, are not called, or are deceased at the time of trial." *Id.*, 298 Minn. at 232, 234, 214 N.W.2d at 678, 679. We reasoned the hospital entries on accident causation, unless relevant to the patient's medical care, lacked the requisite trustworthiness for the business records hearsay exception.

■ Here the trial court deemed Dr. Caspers' notes not hearsay at all because they were party admissions. This was error. Under Minn.R.Evid. 801(d)(2), a statement is not hearsay if "the statement is offered against a party and is (A) his own statement * * *." But offered how? If offered through the testimony of Dr. Caspers, if Dr. Caspers takes the stand and says this is what Mrs. Wagner told me, we clearly have a "nonhearsay" admission of a party opponent because Dr. Caspers' testimony is grist for the mill of the adversary system, including cross-examination and witness demeanor. If, however, Mrs. Wagner's statement is offered by means of a hospital business record received on a foundation laid by the hospital librarian, there is no witness to cross-examine. The only "witness" is the business record itself, and, as we held in *Lindstrom,* a hospital record purporting to recite the patient's version of how the accident happened, a statement unnecessary to her health care, lacks trustworthiness. Thus, the business records hearsay exception cannot be used, in this instance, to make a party's statement admissible as a "nonhearsay" admission.

■ Even so, the error was harmless. In ruling on plaintiffs' motion *in limine,* it was evident to the trial judge, no matter which way he ruled, that one party or the other would call Dr. Caspers. Once Dr. Caspers testified to plaintiff's statement, it would have been within the trial judge's discretion whether to receive also the doctor's notes—not as an admission, but to rebut any express or implied charges of recent fabrication, improper influence or motive. This is exactly what happened. Plaintiffs called Dr. Caspers in an effort to "explain away" his notes, and the doctor's

notes were then put in evidence. Plaintiffs say they were "trapped" into calling Dr. Caspers by the trial court's erroneous ruling. But if the trial court had ruled correctly, *i.e.,* if the trial court had said it would consider admitting the doctor's notes if and when the doctor testified, defendant would have called the doctor. Plaintiffs were not trapped. They simply lost a tactical advantage they would not have had anyway.

■ The majority opinion of the court of appeals (although not a majority of its members) argues the doctor's notes were also inadmissible as evidence of a protected doctor-patient communication, and that the privilege was not waived by Minn.R.Civ.P. 35.03. If a patient voluntarily places her health in controversy, as Mrs. Wagner did here, Rule 35.03 says "such party thereby waives any privilege he may have in that action regarding the testimony of every person who has examined * * * him * * * in respect of the same mental, physical or blood condition." Does this language mean the party waives "any privilege" or only a privilege relating to the party's health? Rule 35.03 is a discovery rule. It is designed, we think, to afford disclosure of relevant medical evidence plus facts which may lead to other relevant evidence. *See generally Wenninger v. Muesing,* 307 Minn. 405, 410–11, 240 N.W.2d 333, 336–37 (1976) (discusses the policy underlying Rule 35.03). We hold, therefore, that any possible doctor-patient privilege for the patient's statement to the doctor of how the accident happened was waived.

■ 2. During the direct testimony of the skating rink manager, defendant offered in evidence the manager's accident report which stated, "Tried to avoid a young child at the 1st exit, slipped and lost her balance right outside of the exit." Plaintiffs told the court they had no objection and the accident report was received. Plaintiffs now say the trial court should not have admitted the report. They argue they had preserved their claim of error because earlier in the trial, during defendant's cross-examination of Vera Wagner,

they had objected (unsuccessfully) to questions about what plaintiff had told the manager and which statements were in the accident report. The trial court only ruled that defense counsel could make reference to what was in the accident report while cross-examining plaintiff, and expressly stated the admissibility of the report itself was not before him at the time. We hold plaintiffs waived any claim of error in admission of the accident report by failing to object to its admission. Presumably, plaintiffs did not object to the accident report itself because, the manager having already testified to its contents, plaintiffs felt the report was admissible under some other applicable hearsay exception, such as to negate recent fabrication.

■ 3. Finally, plaintiffs claim it was error for the trial court to admit in evidence photographs of signs posted around the rink stating: "Because of the normal risk of maintaining balance on skates and the probability of occasional contact between skaters, accidents can and do happen. You must voluntarily assume the risk of injury when you skate." Plaintiffs claim the signs prejudicially suggested to the jury that Mrs. Wagner consented to all risks, inherent or otherwise; and defendant claims the signs were relevant to whether plaintiff had notice of the risks involved. It was for the trial court to consider whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, Minn.R.Evid. 403, and we will reverse only when the discretion of the trial court has been "clearly abused." *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983). We cannot say discretion was abused here. *See Wells v. Minneapolis Baseball & Athletic Ass'n*, 122 Minn. 327, 334–35, 142 N.W. 706, 709 (1913).

The court of appeals is reversed and the denial of plaintiffs' post-trial motions by the trial court is affirmed.

Reversed.