Robert Arlen ANDREN, Appellant,

v.

WHITE–RODGERS COMPANY, A DIVISION OF EMERSON ELECTRIC CO., Respondent,

Sears, Roebuck & Co., a New York corporation, Respondent.

WHITE–RODGERS COMPANY, A DIVISION OF EMERSON ELECTRIC CO., defendant and third-party plaintiff, Respondent,

v.

FLEXAN CORPORATION, an Illinois corporation, third-party defendants, Respondent,

Minnesota Rubber, a Quadian Company, Third–Party Defendant.

No. CX–90–1755.

Court of Appeals of Minnesota.

Jan. 22, 1991.

Review Denied March 27, 1991.

John P. Clifford, John L. Greer, Meshbesher, Singer & Spence, Ltd., Minneapolis, for Andren.

Brian N. Johnson, Bruce L. McLellan, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Minneapolis, for White–Rodgers Co.

Gene P. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for Sears, Roebuck & Co.

Mark Bloomquest, Steve C. Eggimann, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Flexan Corp.

Considered and decided by FOLEY, P.J., and NORTON and SHORT, JJ.

## OPINION

SHORT, Judge.

This products liability action arises from a liquid propane gas explosion in Robert Andren's cabin. On appeal from a grant of summary judgment, Andren argues the trial court erred in deciding his lighting of a cigarette in a basement filled with gas was a legal bar to recovery. We disagree and affirm.

## FACTS

Andren owned a lake cabin which was heated by liquid propane (LP) gas. A line ran from an LP tank outside the cabin to a space heater in the basement. Andren bought the space heater in used condition in 1982 and installed it himself. The heater operated for several winters without problems.

In January of 1985, Andren went to check on the cabin. When he entered the basement, he noticed the smell of LP gas. After turning on the basement light, Andren discovered the smell of gas grew stronger as he walked further into the basement. Believing the pilot light on the heater had blown out, Andren sent his daughter upstairs to find matches to use to light the heater later. Andren then tried to open the basement windows to air out the room.

Because the basement windows were jammed shut, Andren decided to get a screwdriver from his car to pry them open. Before Andren left the basement, he stopped just inside the door and lit a cigarette. The LP gas exploded and the basement began to burn. Andren's hands, face and head were severely burned.

Although Andren had no formal training regarding LP gas appliances, he had installed over 100 LP gas heaters. Andren had also used LP gas appliances all of his life. He knew LP gas was dangerous and could explode if exposed to a spark or an open flame. Andren specifically knew not to smoke or to light a match when the smell of LP gas was in the air.

Andren claims a defective regulator in the gas heater allowed LP gas to leak into the basement. He sued the manufacturer, White–Rodgers Company, and the retailer, Sears, Roebuck & Co., alleging strict liability, breach of warranty and negligence. The manufacturer brought Flexan Corporation into the lawsuit by alleging it provided the defective regulator part. The manufacturer moved for summary judgment and agreed, for purposes of the motion, the valve in the LP gas heater was defective. The trial court granted summary judgment against Andren and held Andren's claims were barred because he primarily assumed the risk of injury.

## ISSUE

Did the trial court err by concluding primary assumption of the risk is a legal bar to Andren's claims?

## ANALYSIS

On appeal from a grant of summary judgment, we must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. and Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The facts are not disputed. The only issue before this court is whether primary assumption of the risk can be a bar to recovery in a products liability case. We need not defer to the trial court's application of the law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

Minnesota law recognizes two types of assumption of the risk. *Swagger v. City of Crystal,* 379 N.W.2d 183, 184 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 19, 1986). Primary assumption of the risk arises:

> Where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. As to those risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent.

*Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974). Conversely, secondary assumption of the risk "is a type of contributory negligence where the plaintiff voluntarily encounters a known and appreciated hazard created by the defendant without relieving the defendant of his duty of care with respect to such hazard." *Armstrong v. Mailand,* 284 N.W.2d 343, 349 (Minn.1979). The elements of both primary and secondary assumption of the risk are whether a person had (a) knowledge of the risk; (b) an appreciation of the risk; and (c) a choice to avoid the risk but volun-

tarily chose to chance the risk. *See id.* at 351; *Olson,* 299 Minn. at 44, 45, 216 N.W.2d at 127, 128; *Goodwin v. Legionville School Safety Patrol Training Center,* 422 N.W.2d 46, 49 (Minn.App.1988), *pet. for rev. denied* (Minn. June 23, 1988); *see also* Restatement (Second) of Torts §§ 496A–E (1965). The manifestations of acceptance and consent dictate whether primary or secondary assumption of the risk is applicable in a given case. *Armstrong,* 284 N.W.2d at 351. The wisdom and reasonableness of the plaintiff's actions are not factors in the determination. *Id.*

■ The doctrine of primary assumption of the risk defines the limits of a defendant's duty to the plaintiff. *Id.* By voluntarily entering into a situation where the defendant's negligence is obvious, the plaintiff accepts and consents to it and agrees "to undertake to look out for himself and relieve the defendant of the duty." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts,* § 68, at 485 (5th ed. 1984) (hereinafter W. Keeton). When the facts are undisputed and reasonable people can draw only one conclusion, assumption of the risk is a question of law for the court. *Schroeder v. Jesco, Inc.,* 296 Minn. 447, 451, 209 N.W.2d 414, 417 (1973).

■ Andren argues the trial court erred by granting summary judgment for respondents because primary assumption of the risk does not apply in products liability cases. We disagree. In *Armstrong,* the supreme court applied the doctrine of primary assumption of the risk to a products liability claim. *See Armstrong,* 284 N.W.2d at 352. The supreme court stated that the public policies underlying strict liability actions did not require the plaintiff's conduct to be removed from consideration when the court assessed liability. *Id.* Although *Armstrong* interpreted the fireman's rule, which has since been statutorily abolished, the theory underlying *Armstrong* has been adopted in other cases. *See, e.g., Omnetics, Inc. v. Radiant Technology Corp.,* 440 N.W.2d 177, 181 (Minn. App.1989) (plaintiff's fault may be examined in a strict products liability action).

Minn.Stat. § 604.01, subds. 1, 1a (1988) also provides a plaintiff's conduct, including unreasonable assumption of the risk, can be considered in strict liability and breach of warranty actions. Thus, primary assumption of the risk is applicable in a products liability action involving a defective product. *See also Wagner v. Firestone Tire & Rubber Co.,* 890 F.2d 652, 657 (3d Cir.1989) (assumption of risk is a complete defense in design defect cases); *Rolfes v. International Harvester Co.,* 817 F.2d 471, 474 (8th Cir.1987) (Iowa law provides that assumption of the risk is a defense in a defective product case); Restatement (Second) of Torts § 402A, comment n (1965).

■ The abolition of the latent-patent danger rule does not preclude the application of primary assumption of the risk to a products liability action. The latent-patent danger rule absolves a manufacturer from liability for injuries caused by a defective product when the danger is obvious. *Holm v. Sponco Mfg., Inc.,* 324 N.W.2d 207, 210 (Minn.1982). Conversely, primary assumption of the risk relieves a defendant of liability when the plaintiff knows and appreciates a danger, yet voluntarily chooses to chance the risk. *Goodwin,* 422 N.W.2d at 49. Thus, primary assumption of the risk involves subjective and volitional elements which are beyond the scope of the latent-patent danger rule.

■ The three elements of both primary and secondary assumption of the risk are present in this case. First, Andren demonstrated his knowledge of the risk by testifying he knew LP gas was dangerous and was specifically aware that lighting a cigarette in a room filled with LP gas would cause an explosion. Second, the record shows appellant appreciated the risk because he recognized the smell of LP gas in the basement, and knew he should not light a cigarette while he was in the basement. Finally, the evidence is clear Andren had a choice to avoid the danger by not smoking, yet he voluntarily chose to light the cigarette.

Andren's lighting of a cigarette in a gas-filled room was a voluntary acceptance of a known danger. *See Armstrong,* 284

N.W.2d at 351. The volitional act constituted consent to relieve respondents of their duty to protect Andren from harm. That Andren lighted the cigarette without considering its consequences makes his act no less volitional, *see Jacobs v. Southern Ry. Co.,* 241 U.S. 229, 236, 36 S.Ct. 588, 591–92, 60 L.Ed. 970 (1916), because it is clear a reasonable person in his position must have understood the danger. *See Schroeder,* 296 Minn. at 452, 209 N.W.2d at 418. In essence, respondents were relieved of their duty to protect Andren because Andren was in an equal position to protect himself. *See* W. Keeton, *supra,* § 68, at 490–91.

■ Further, the smell of gas in this case alerted Andren to the need to use extreme caution in the basement. In any products liability case, the plaintiff must establish a causal relationship between the defect and the injury. *Bilotta v. Kelley Co.,* 346 N.W.2d 616, 623 n. 3 (Minn.1984); *Rients v. International Harvester Co.,* 346 N.W.2d 359, 362 (Minn.App.1984). Here, the issue of causation did not require jury determination where the obvious danger of Andren's activities eliminates the alleged defective valve as the substantial cause of the accident. *See Balder v. Haley,* 399 N.W.2d 77, 82 (Minn.1987) (no need to submit causation to jury because it was clear that failure to warn had no causal relationship to plaintiff's injury). Under these circumstances, the trial court properly granted summary judgment for respondents.

## DECISION

Andren primarily assumed the risk of an explosion when he lit a cigarette in a room filled with LP gas, thereby barring his products liability claim against respondents. Further, as there was no jury question on the causal relationship between the product defect and Andren's injury, the trial court properly granted summary judgment for respondents.

Affirmed.

NORTON, Judge (dissenting).

I respectfully dissent. Contrary to the majority's opinion, I do not believe that the doctrine of primary assumption of risk applies to this case. I would remand this case for a jury to decide the negligence of all parties.

The application of primary, rather than secondary, assumption of the risk depends "upon the plaintiff's manifestation of consent, express or implied, to relieve the defendant of a duty." *Armstrong v. Mailand,* 284 N.W.2d 343, 351 (1979). "The classes of cases involving an implied primary assumption of risk are not many." *Springrose v. Willmore,* 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971). In Minnesota, primary assumption of the risk has been most often applied to inherently dangerous sporting events. *See Wagner v. Thomas J. Obert Enter.,* 396 N.W.2d 223 (Minn.1986) (roller skating); *Swagger v. City of Crystal,* 379 N.W.2d 183 (Minn.App.1985) (softball), *pet. for rev. denied* (Minn. Feb. 19, 1986).

Primary assumption of the risk is inapplicable in the present case because Andren never agreed to relieve defendants of their duty to protect him. I do not agree that consent to release defendants from their duty can be implied from Andren's act of lighting a cigarette. He would never have consented to self combustion. Absent a manifestation of consent, Andren's act embodied secondary, not primary, assumption of the risk. As secondary assumption of the risk is a form of contributory negligence, *see Springrose,* 292 Minn. at 24, 192 N.W.2d at 827, I would remand this case to a jury for an apportionment of fault.

I am also troubled by the majority's characterization of Andren's act as a voluntary choice. To primarily assume a risk, a plaintiff must voluntarily choose to chance a known and appreciated risk. *Armstrong,* 284 N.W.2d at 351. As I believe that reasonable people could find that the absentminded, habitual act of lighting a cigarette did not constitute a voluntary choice to encounter the risk of an explosion, I would remand this case to a jury to determine whether Andren's act was a voluntary choice.