**William R. BABER, et al., Appellants,**

v.

**Mike DILL, Respondent.**

**No. C1–93–1075.**

Court of Appeals of Minnesota.

Jan. 4, 1994.

Considered and decided by PETERSON, P.J., and KLAPHAKE and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellants William R. ("Bill") and Mary Lou Baber brought this lawsuit against respondent Mike Dill alleging negligence and seeking damages for personal injuries that Bill Baber sustained when he slipped, fell and was impaled on a steel reinforcing rod. This happened when Baber was helping dredge a lake water channel fronting a retaining wall located on property owned by Dill. The Babers challenge the trial court's entry of a directed verdict in favor of Dill based on Bill Baber's primary assumption of the risk. We reverse and remand.

## FACTS

Bill Baber was hired by his brother, Don Baber, to help construct a retaining wall on Dill's lakeshore property and dredge a channel fronting the retaining wall. During the first day, Bill Baber worked on the retaining wall which was made of timbers held in place by steel reinforcing rods. The Babers presented evidence that at the end of the day, Don Baber told Dill that they should remove the remaining exposed reinforcing rods that projected upward above the wall timbers. Dill allegedly said that he wanted to wait until he decided how high to construct the wall.

The next day, before Dill appeared at the worksite, Don Baber instructed Bill Baber to guide him while he was using a backhoe to dredge the channel. Don Baber operated the backhoe from behind the retaining wall with the bucket descending beyond the wall and down into the channel. Don Baber could not see the position of the bucket and therefore needed help. Bill Baber stood on the retaining wall to watch the bucket. While standing there, he was startled when the bucket jerked unexpectedly, and he fell and was impaled on an exposed reinforcing rod.

The evidence is disputed whether Dill knew what the brothers were doing. It is undisputed, however, that Bill Baber and his brother did not think that they could remove

Jerrold M. Hartke, Rolin L. Cargill, The Hartke Law Firm, South St. Paul, for appellants.

Mark A. Gwin, Cousineau, McGuire & Anderson, Chtd., Minneapolis, for respondent.

the exposed rods without Dill's permission. The facts are also disputed as to whether Bill Baber had any alternative to standing on the retaining wall while directing his brother, and whether Don Baber and Dill were involved in a joint enterprise.

At the close of evidence, the trial court granted a directed verdict in Dill's favor, finding as a matter of law that Bill Baber's acts amounted to primary assumption of the risk, that Don Baber and Dill were not in a joint enterprise and that Bill Baber's negligence superseded any negligence of Dill.

## ISSUE

Did the trial court err in holding that primary assumption of the risk bars the Babers' claims?

## ANALYSIS

■ To direct a verdict, the evidence must be insufficient as a matter of law to present a question of fact to the jury. *Peterson v. Little–Giant Glencoe Portable Elevator Div. of Dynamics Corp. of America,* 366 N.W.2d 111, 115 (Minn.1985). We review the record to determine whether there are fact questions for the jury.

At one time, assumption of the risk was a complete bar to recovery by a plaintiff. *See Armstrong v. Mailand,* 284 N.W.2d 343, 348–49 (Minn.1979). In 1971, the Minnesota Supreme Court held that there are two kinds of assumption of the risk, primary and secondary. *Id.* (citing *Springrose v. Willmore,* 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971)).

> [P]rimary assumption of the risk remains as an absolute bar to the plaintiff's recovery, whereas secondary assumption of the risk becomes a question of comparative negligence. Primary assumption of the risk is not really an affirmative defense; rather, it indicates that the defendant did not even owe the plaintiff any duty of care.
> * * *.
> 
> * * *
> 
> On the other hand, secondary assumption of the risk is a type of contributory negligence where the plaintiff voluntarily encounters a known and appreciated hazard created by the defendant without relieving

the defendant of his duty of care with respect to such hazard.

*Armstrong,* 284 N.W.2d at 348–49.

■ When a plaintiff has undertaken primary assumption of the risk, he has

> "voluntarily entered a relationship in which [he] assumes well-known, incidental risks. As to these risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent."

*Wagner v. Thomas J. Obert Enters.,* 396 N.W.2d 223, 226 (Minn.1986) (quoting *Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974)). Secondary assumption of the risk, however,

> "is an affirmative defense to an established breach of duty which may only be raised when the plaintiff has voluntarily chosen to encounter a known and appreciated danger created by the negligence of the defendant."

*Wagner,* 396 N.W.2d at 226 (quoting *Olson,* 299 Minn. at 43, 216 N.W.2d at 127). Thus, primary assumption of the risk encompasses those cases in which the defendant owes no duty to protect the plaintiff from a risk of harm, and therefore cannot be negligent. On the other hand, secondary assumption of the risk exists where defendant owes plaintiff a duty, and the question of the plaintiff's contributory negligence involves plaintiff's knowledge and appreciation of a danger created by defendant's negligence.

In the small segment of cases to which primary assumption of the risk is applicable are those "involving patrons of inherently dangerous sporting events, such as skating." *Wagner,* 396 N.W.2d at 226 (citation omitted). Nonetheless, even though skating may be inherently dangerous, skating rink management is not relieved of its "duty to safely supervise skating activities or to maintain the premises in a safe condition." *Id.* If the facts of a case are disputed, it may be necessary to allow the jury to first decide the facts in order to determine whether primary or secondary assumption of the risk applies. *Id.*

Two decisions of this court have found primary assumption of the risk as a matter of law. In *Goodwin v. Legionville Sch. Safety Patrol Training Ctr.*, 422 N.W.2d 46, 48 (Minn.App.1988), *pet. for rev. denied* (Minn. June 23, 1988), the plaintiff was a volunteer roof worker who knew of the risks of working on a roof. This court said:

> There will be a limited number of cases in which the doctrine of primary assumption of risk applies. There will be an even more limited number of cases in which the evidence is so clear and undisputed as to present no fact issues for the jury to decide, and the actions of the claimant are such as to constitute primary assumption of risk as a matter of law. In our opinion, this is such a case.

*Id.* at 50.

In *Andren v. White–Rodgers Co.*, 465 N.W.2d 102 (Minn.App.1991), *pet. for rev. denied* (Minn. Mar. 27, 1991), the plaintiff was familiar with the danger of leaking LP gas and "specifically knew not to smoke or to light a match when the smell of LP gas was in the air." *Id.* at 104. Nevertheless, the plaintiff voluntarily undertook the risk by absent-mindedly lighting a cigarette. *Id.* at 105. *Andren* can be distinguished from the case at hand, however, by the fact that Bill Baber was an employee following directions. The evidence does not show that he had a realistic choice to refuse to continue working while the reinforcing rods were exposed. *Cf., e.g., Foster v. A.P. Jacobs & Assocs.*, 85 Cal.App.2d 746, 193 P.2d 971, 976 (1948) (plaintiff not expected to "waive all recourse for using a floor that her duties of long standing required her to use just because her employer's landlord chose not to exercise ordinary care in maintaining the floor"), *quoted in Peterson v. W.T. Rawleigh Co.*, 274 Minn. 495, 499, 144 N.W.2d 555, 559 (1966).

■ Here, if Bill Baber had been impaled on a reinforcing rod while going about his job constructing the retaining wall, he might have primarily assumed the risk, because it was a necessary and incidental part of the job. *See Wagner*, 396 N.W.2d at 226. His injury occurred, however, when he was guiding his brother's operation of a backhoe.

Bill Baber presented evidence that Don Baber wanted to remove the exposed pieces of reinforcing rod when they finished the retaining wall the day before, but that Dill said to leave them because he had not made up his mind whether to add one more level to the retaining wall. While a jury could find that Bill Baber secondarily assumed the risk (was contributorily negligent) in failing to protect himself from the exposed reinforcing rods while guiding the backhoe, the hazardous reinforcing rods were not so clearly a necessary and incidental risk of guiding the backhoe as to invoke the doctrine of primary assumption of the risk as a matter of law. In disputed cases such as this, as the supreme court indicated in *Wagner*, the jury should first decide the facts in order to answer questions of primary and secondary assumption of the risk. By directing a verdict, the trial court improperly decided disputed facts.

### DECISION

The trial court improperly decided fact questions when it directed the verdict. Those fact questions include whether Bill Baber had an alternative to standing on the retaining wall to direct his brother's use of the backhoe and whether Bill Baber's brother and Dill were in a joint enterprise. Therefore, we must reverse the trial court's directed verdict and remand for a new trial.

**Reversed and remanded.**