Jane DOE, Appellant,

v.

**BRAINERD INTERNATIONAL RACEWAY, INC.,**
Respondent,

North Country Security, Inc., Respondent.

No. C4–93–1734.

Court of Appeals of Minnesota.

April 12, 1994.

Review Granted June 15, 1994.

James M. Sherburne, Sherburne Law Offices, P.A., Minneapolis, for appellant.

Robert G. Haugen, Johnson & Lindberg, P.A., Minneapolis, for Brainerd Intern'l. Raceway, Inc.

Richard L. Pemberton, Jr., W.D. Flaskamp, Meagher & Geer, Minneapolis, for North Country Sec., Inc.

Considered and decided by PARKER, P.J., and HUSPENI and FOLEY, JJ.*

## OPINION

PARKER, Judge.

After a wet T-shirt contest in which she participated degenerated into a sexual performance, Doe, a minor, brought suit in tort against Brainerd International Raceway, Inc., and North Country Security, Inc., and demanded damages in excess of $50,000. Respondents moved for summary judgment, arguing that they had no duty to protect Doe, a trespasser, from the outcome of her voluntary actions and that they could not foresee the criminal activities of the contest organizers. The trial court granted summary judgment upon respondents' motion and upon grounds invoked *sua sponte,* and Doe appeals. We reverse.

## FACTS

In August of 1988, the Quaker State Northstar National race took place at the Brainerd International Raceway (BIR). This was an annual event lasting several days and which had a reputation for general raucousness and uncontrolled behavior. BIR normally obtained the services of North Country Security, Inc., (NCS) for such events and did so for this event. BIR provided NCS personnel many of the tools they needed to perform their duties, including belts, handcuffs, handcuff holders, flashlight holders, and radios. BIR did not permit NCS to make use of the public address system at the raceway without BIR's express advance permission.

Doe, a 16–year–old runaway who had previously, at another location, participated in a wet T-shirt contest involving no nudity, entered the BIR grounds by using a pass obtained by another person. NCS personnel testified that it was impossible to prevent all persons without valid passes from entering or remaining on the grounds. Doe admitted to ingesting drugs and alcohol provided her by patrons of the event.

A wet T-shirt contest, which had been held in previous years with the knowledge of respondents, was planned by persons not employed by either respondent. Doe adduced evidence that BIR and NCS had knowledge of the 1988 contest; testimony revealed that, on the premises, advertising flyers had been distributed, a large banner had been posted proclaiming it and a stage constructed for it. In *State v. Borden,* 455 N.W.2d 482 (Minn. App.1990), *pet. for rev. denied* (Minn. July 13, 1990), in which this court upheld the criminal conviction of one of the male organizers of this very event, the court said:

> In preparation for the contest, Borden prepared printed flyers and obtained scaffold-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ing to use for the stage. An ice cream bucket, with a sign asking for donations, was set outside the front gate.

*Id.* at 483.

Doe produced evidence that the head of the security force hired for the event had given approval for the wet T-shirt contest, even though prevention of the contest had been a goal of the security plan established by BIR and NCS. The contest held the previous year had involved nudity, but no sexual interaction between the contestants and the contest organizers.

Doe further produced evidence that it was generally known that the crowd's behavior at the Quaker State race was normally much more out of hand than it was at other events held at BIR. Security personnel said they would not venture into the most dangerous area of the BIR compound, especially after dark; they referred to this area as the "zoo," and it was where the wet T-shirt contest took place. Acts of violence were common in "the zoo," including explosion of pipe bombs, the burning of cars, and sexual molestation—even of minors. Security personnel would not accompany paramedics into the zoo to assist injured persons and warned them that they might be killed if they ventured into the area after dark.

Attendance at the wet T-shirt contest was heavy: "The crowd was estimated to be between 2,000 and 3,000 people, predominantly men." *Id.*

Doe participated as a contestant in the event, which began with a sopping of the contestants' clothes and gradually escalated into a striptease. After the contestants were completely nude, the male organizers of the event hoisted contestants into the air, spread the contestants' legs and inserted their fingers, tongues, and phallic devices into the contestants' vaginas. This activity continued for at least 45 minutes. A videotape of the performance was made by spectators of the event.

As to the presence of security at the contest, Keith Emerson, the head of NCS, testified that three officers had been assigned to the zoo. One of the three was deposed, however, and he testified he knew nothing about the contest until it was over. Emerson also claimed that when he first learned of the contest, that same afternoon, he started pulling in additional security by means of his walkie-talkie. But many officers, even several whom Emerson claimed to have contacted, testified that they had neither received nor heard such a message. Another guard Emerson claimed to have contacted testified that he did not work at the Quaker State event in 1988. Emerson testified it took him 20 minutes to brief the officers on shutting down the contest, but that all he actually told them was that he would decide how to handle the situation once they actually arrived at the scene. He further admitted that the contest was over by the time he and his reinforcements arrived.

In response to Doe's complaint, respondents claimed that any injury to her was due to contributory negligence or to actions of third parties. Respondents further pled that Doe assumed the risk of her injuries.

The trial court granted summary judgment in favor of respondents, ruling that Doe entered the contest voluntarily and that the contest itself was organized without the consent of BIR, which, the court found, did not hear of the event until a day after it occurred. The trial court found that by the time NCS had heard of the event and rounded up security personnel to put a stop to it, it was over.

## ISSUES

I. Did respondents have a duty of care toward Doe?

A. Did respondents have a duty created by Minn.Stat. § 617.246 (1988) not to permit Doe to engage in a sexual performance?

B. Did respondents have a duty to prevent foreseeable criminal acts of third parties, occurring on BIR's premises, that presented a risk of harm to a known trespasser?

C. Does primary assumption of the risk negate either Doe's common law claim or her statutory claim?

II. Is BIR vicariously liable for the negligence of NCS?

III. Did the trial court err in granting summary judgment on grounds not raised by the moving party, without notice and without affording the opposing party a meaningful opportunity to oppose summary judgment on those grounds?

## DISCUSSION

### *Standard of Review*

█ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

█ Upon a motion for summary judgment, the nonmoving party has the benefit of that view of the evidence which is most favorable to him and is entitled to have all doubts and factual inferences resolved against the moving party. *Progressive Cas. Ins. Co. v. Kraayenbrink,* 370 N.W.2d 455, 459 (Minn. App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985). The trial court, however, improperly viewed the evidence in this case in the light least favorable to Doe.

### I. Duty

#### A. Statutory Duty and Absolute Liability

█ In her reply to respondents' motions for summary judgment, Doe raised a claim that Minn.Stat. § 617.246 (1988) imposed a duty upon BIR and NCS not to permit her to engage in the activity that occurred during the wet T–shirt contest. The statute reads:

Subd. 2. **Use of minor.** It is unlawful for a person to promote, employ, use or permit a minor to engage in * * * any sexual performance if the person knows or has

reason to know that the conduct intended is a sexual performance.

"Sexual performance" means

any play, dance or other exhibition before an audience or for purposes of visual or mechanical reproduction which depicts sexual conduct as defined by clause (e).

Minn.Stat. § 617.246, subd. 1(d) (1988). Clause (e), in turn, specifies that "sexual conduct" means

(i) an act of sexual intercourse * * * including * * * oral-genital intercourse.

\* \* \* \* \* \*

(iii) Masturbation or lewd exhibitions of the genitals.

(iv) Physical contact * * * with the unclothed pubic areas * * * whether alone or between members of the same or opposite sex.

In *Kronzer v. First Nat'l Bank of Minneapolis,* 305 Minn. 415, 423–24, 235 N.W.2d 187, 193 (1975), the supreme court stated:

Not all penal statutes establish a tort duty of care under all circumstances. We have long followed the criteria set forth by the American Law Institute in Restatement, Torts 2d, in determining which statutes give rise to a civil duty. Section 286 states:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded."

The trial court failed to address Doe's statutory theory in her ruling that respondents owed no duty toward Doe. Because Minn. Stat. § 617.246 (1988) by its own terms is designed to protect minors, we conclude, in applying the above analysis, that the statute imposes a tort duty of care toward the minor, Jane Doe, upon both BIR and NCS.

BIR and NCS argue that because the statute does not provide for a civil action in the event of its violation, Doe's statutory claim is foreclosed. They contend that the violation of a criminal statute does not create a civil cause of action unless the criminal statute

expressly so provides or there is a basis in the common law for the imposition of a duty.

 Statutes laying down rules of safety for the protection of the public or any class or group of individuals are regarded by the courts as negligence statutes. *Dart v. Pure Oil Co.*, 223 Minn. 526, 532, 27 N.W.2d 555, 558 (1947). Violation of such statutes constitutes conclusive evidence of negligence, against which the defense of contributory negligence is applicable, unless the legislature makes clear that the defense is excluded. *Id.* 27 N.W.2d at 559. Statutes whose purpose is to "protect a limited class of persons from their own inexperience, lack of judgment, inability to protect themselves or to resist pressure, or tendency toward negligence" impose absolute liability upon the defendant. *Zerby v. Warren*, 297 Minn. 134, 139, 210 N.W.2d 58, 62 (1973). There can be no contributory negligence as a matter of law when "the statute was intended * * * for the protection of a limited class of persons from their inability to protect themselves." *Seim v. Garavalia*, 306 N.W.2d 806, 811 (Minn. 1981) (quoting *Dart*, 223 Minn. at 535, 27 N.W.2d at 560).

> Types of statutes which would be exceptions to the general rule [allowing the defense of contributory negligence] include (1) child labor statutes; (2) statutes for the protection of intoxicated persons; and (3) statutes prohibiting sale of dangerous articles to minors.

*Zerby*, 297 Minn. at 140, 210 N.W.2d at 62.

At oral argument, NCS cited *Seim* for the proposition that primary assumption of the risk applies to cases of strict liability. We are dealing in this case, however, with a question of absolute liability.

In *Jeffers v. Convoy Co.*, 636 F.Supp. 1337 (D.Minn.1986), raised by respondents, the court rejected the argument that a violation of the polygraph statute, Minn.Stat. § 181.76, gave rise to a civil cause of action because a similar statute, Minn.Stat. § 181.75, explicitly did so. *Id.* at 1340–42. The court viewed the difference between the statutes as evidence of the legislature's intent not to provide a private cause of action for section 181.76. The court noted that the statutes had been enacted at the same time but that section 181.75 had subsequently been amended to provide for a private cause of action. The legislature did not so amend section 181.76. *Id.* at 1341.

 This case is not subject to the analysis used by the court in *Jeffers*, because there is no applicable companion statute here which would indicate a legislative intent to provide or deny a civil cause of action.[1] Thus, the *Kronzer* principle, discussed above, must control and we conclude that Minn.Stat. § 617.246 authorizes a civil cause of action and imposes absolute liability for its violation.[2] Although this reasoning was advanced by appellant in opposing the summary judgment motion, there was no reference to the statute in the order granting the motion or in the accompanying trial court memorandum.

### B. Common–Law Duty to Protect Trespassers Against Foreseeable Criminal Acts

█ Doe asserts that respondents had a common law duty to protect her, a trespassing minor, from the foreseeable criminal acts of third parties occurring on the BIR premises. She asserts that BIR, and its agent NCS, owed her this duty as the operator of a place of amusement and by virtue of their special relationship to her. Indeed, she alleges BIR and NCS had a heightened duty

---

**1.** During oral argument, counsel for respondent BIR raised, for the first time, a statute entitled "Civil action; use of a minor in a sexual performance," Minn.Stat. § 617.245, enacted in 1992, expressly providing for a cause of action in favor of minors under the age of 16. Passage of this statute demonstrates a legislative intent to restrict any cause of action existing under Minn. Stat. § 617.246 to persons who have not yet reached the age of 16, and was given effect on August 1, 1992, without language of retroactivity. *See* Minn.Stat. § 645.21 (1992) (no law shall be considered retroactive unless manifestly intended by legislature).

**2.** Even were we to find that violation of the statute imposed only strict liability or negligence per se, in which case traditional tort defenses would be applicable, primary assumption of the risk would not negate Doe's claim, as respondents argue, since we hold that doctrine to be inapplicable (see section C herein).

because of its knowledge that minors were on the premises.[3]

■ In the absence of a special relationship, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another. *Spitzak v. Hylands Ltd.*, 500 N.W.2d 154, 156 (Minn. App.1993), *pet. for rev. denied* (Minn. July 15, 1993). "Whether a duty to protect is imposed * * * depends upon both the relationship of the parties and the foreseeable risk involved." *Id.* (citations omitted).

■ Commercial landowners may, under some circumstances, be civilly liable for injuries resulting from the criminal acts of third parties. The trial court deemed the criminal acts suffered by Doe completely unforeseeable and due to her own behavior and choice. The law of Minnesota does not support this reasoning. In *Rieger v. Zackoski*, 321 N.W.2d 16, 20 (Minn.1982), the supreme court concluded that the rambunctiousness at these same premises imposed upon BIR a high degree of care toward its patrons. In that case the supreme court agreed that BIR was negligent in failing to prevent, and in fact making it easy for, patrons to enter an area of the compound where one of them was subsequently injured:

> [W]e find that reasonable care in the circumstances of this case—high speed raceway, alcoholic beverages consumed throughout the weekend, place of amusement operated for profit by possessor—*would* entail a high degree of care. The duty increases as the risks, which the proprietor to some extent encourages, increase.

*Id.* at 20 (emphasis in original).

Despite a record replete with evidence of the high risk of criminal activity on the premises of BIR during this racing event, neither the trial court order nor the memorandum takes note of this lawless atmosphere.

The owner and operator of a commercial parking ramp has been held to owe a duty to customers to provide security adequate to deter criminal activity upon the premises. *See, e.g., Erickson v. Curtis Investment Co.*, 447 N.W.2d 165, 168–69 (Minn.1989). Likewise, hospitals have been held to owe a duty of reasonable care for the protection and well-being of vulnerable patients. Such a duty extends to guarding against criminal attacks which a reasonable person might anticipate. *See, e.g., Sylvester v. Northwestern Hosp. of Minneapolis*, 236 Minn. 384, 386–87, 53 N.W.2d 17, 19 (1952); *Roettger v. United Hosps. of St. Paul*, 380 N.W.2d 856, 859–60 (Minn.App.1986). On the other hand, in *Spitzak* the court concluded that an apartment complex does not present as attractive an opportunity for criminals and criminal activity as does a parking ramp. The rationale of the trial court upheld on appeal was that "[t]he apartment complex owned by the defendants is not comparable to a dimly lit, relatively deserted parking ramp generally open to anyone who wishes to do wrong." *Spitzak*, 500 N.W.2d at 157.

■ Although the trial court was correct in concluding that the owner of a place of public amusement owes a duty to his patrons, *see, e.g., Phillips v. Wild Mountain Sports, Inc.*, 439 N.W.2d 58, 59 (Minn.App.1989), the court failed to apply the exception to the general rule that a landowner is under no duty to warn or use reasonable care for the safety of a trespasser. The exception is that the possessor of land has a duty to use reasonable care for the safety of the trespasser while carrying on his activities, or to use reasonable care to warn the trespasser of the danger or risk involved, when that possessor knows or has reason to know that a trespasser is present on the premises. *Gow v. Turnquist*, 474 N.W.2d 182, 184 (Minn. App.1991) (in which a trespasser at a private party was injured when she fell down stairs, this court reversed summary judgment, finding the possessor's duty raised a genuine issue of material fact); *see also* Restatement (Second) of Torts § 336, Illustration 2 (1965):

---

**3.** Testimony from a case involving the alleged rape of a 13–year–old girl during the Quaker State event revealed BIR's expectation that for every five adults there would be two children admitted onto the premises. A transcript of testimony in this case was presented to the trial court in opposition to the motions for summary judgment.

A is the proprietor of a circus. B is a trespasser who gains admission to the circus tent by crawling under the canvas. While seated with the paying patrons he is injured by the negligence of one of the clowns in exploding a giant cracker too near the audience. B is plainly visible as one of the audience, but is not recognized as a trespasser and is not expelled by the attendant. A is subject to liability to B although A's employees believe B to be a paying patron.

Appellant produced testimony that it was well known that the annual drag race attracted general boisterousness and disorder: BIR and NCS knew that there was an area of the compound, called "the zoo"—the area where the contest took place—where security people and medical personnel were reluctant to venture, because of the known risk of injury or attack. There was in this case, as there was in *Erickson,* a foreseeable opportunity for criminal activity.

Appellant produced evidence that BIR and NCS knew that trespassers were likely to enter the premises. BIR had instructed NCS to watch the fences closely, as this was a common means by which trespassers entered the compound. The head of security testified that NCS was concerned about trespassers entering the BIR compound but that, despite all their efforts, trespassers were nonetheless able to enter the facility.

 The trial court found that BIR was not aware of the wet T–shirt contest, but the record contains considerable evidence that BIR was or should have been aware of it, and the court had before it only a motion for summary judgment. Evidence was produced that there was publicity about the event posted and fliers distributed around the compound. The organizers had rented and erected a large scaffold to serve as a stage. An inference could be drawn from this evidence that security personnel must have noticed the activity, and there was testimony that the organizer of the contest consulted the head of security in advance and secured permission to hold it.

The head of security testified in the criminal proceeding against Borden that he knew in advance that the contest had been planned. One security officer testified he had learned about the contest from patrons of the raceway a full three days prior to its taking place and that he had reported this to his supervisor. Other testimony suggested that some security personnel had actually been present at and watched the event.

Security had been instructed by BIR to prevent a wet T–shirt contest from taking place. Security personnel had adequate means of communicating with each other and could have asked BIR for use of the loudspeaker system. Nonetheless, although the contest lasted approximately one hour, NCS claimed it could not assemble enough security officers to terminate the event before it was over. We hold, as to both BIR and NCS, that there is a genuine issue of material fact as to their advance knowledge of the contest.

**C. Primary Assumption of the Risk**

 The trial court concluded that respondents could not be held liable for Doe's injuries because her actions constituted an assumption of the risk of her injury, relieving respondents of any duty they may have owed her. Such a finding cannot affect the resolution of Doe's statutory claim, as the statute imposes absolute liability.[4] As regards Doe's common law claim, we conclude that, as a matter of law, the trial court erred in applying the doctrine of primary assumption of risk to this case.

In *Baber v. Dill,* 510 N.W.2d 228, 230 (Minn.App.1994), the court of appeals explained that there are two kinds of assumption of the risk:

> [P]rimary assumption of the risk remains as an absolute bar to the plaintiff's recovery, whereas secondary assumption of the risk becomes a question of comparative negligence. Primary assumption of the risk is not really an affirmative defense; rather, it indicates that the defendant did not even owe the plaintiff any duty of care.

4. The statute also provides that consent of the minor to the sexual performance is not a defense to a charge of violation of the statute. Minn. Stat. § 617.246, subd. 5 (1988).

*Id.* (quoting *Armstrong v. Mailand,* 284 N.W.2d 343, 348 (Minn.1979).

 A plaintiff may be held to have undertaken primary assumption of the risk if he or she

> voluntarily enter[s] a relationship in which [he] assumes well-known, incidental risks. As to these risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent.

*Wagner v. Thomas J. Obert Enters.,* 396 N.W.2d 223, 226 (Minn.1986).

> There must first of all, of course, be some manifestation of consent to relieve the defendant of the obligation of reasonable conduct. It is not every deliberate encountering of a known danger which is reasonably to be interpreted as evidence of such consent.

*Iepson v. Noren,* 308 N.W.2d 812, 815 (Minn. 1981) (quoting Prosser, *Handbook on the Law of Torts* § 68 (4th ed.1971)).

> Thus, primary assumption of the risk encompasses those cases in which the defendant owes no duty to protect the plaintiff from a risk of harm, and therefore cannot be negligent. On the other hand, secondary assumption of the risk exists where defendant owes plaintiff a duty, and the question of the plaintiff's contributory negligence involves plaintiff's knowledge and appreciation of a danger created by defendant's negligence.

*Baber,* 510 N.W.2d at 230.

 The elements of primary assumption of the risk are whether a person had (1) knowledge of the risk, (2) an appreciation of the risk, and (3) a choice to avoid the risk but voluntarily chose to chance the risk. *Andren v. White–Rogers Co.,* 465 N.W.2d 102, 104 (Minn.App.1991), *pet. for rev. denied* (Minn. Mar. 27, 1991). Primary assumption of the risk is applicable only to a small segment of cases, including those "involving patrons of inherently dangerous sporting events, such as skating." *Wagner,* 396 N.W.2d at 226; *see also Swagger v. City of Crystal,* 379 N.W.2d 183, 184–85 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 19, 1986) (patrons of baseball games generally assume the risk of injury from thrown or batted balls when they sit in an unprotected seat; no adult of reasonable intelligence could fail to recognize the risk of this type of injury). Nonetheless, primary assumption of the risk does not relieve managers of these events from supervising activities or maintaining the premises in a safe condition. This is because "[n]egligent maintenance and supervision of a skating rink are not inherent risks of the sport itself." *Wagner,* 396 N.W.2d at 226.

In *Baber* an individual who slipped and was impaled on an exposed steel reinforcing rod while assisting with the dredging of a channel next to a retaining wall brought suit for injuries against his employer. The trial court directed a verdict based on primary assumption of the risk and because the injured's negligence superseded any negligence of the defendant. *Baber,* 510 N.W.2d at 230.

This court, noting the existence of disputed fact questions as to whether the injured had any alternative to standing where he did when he was injured and as to whether the employer-defendant knew what the injured was doing, reversed the trial court. We held that, in disputed cases, the jury should first decide the facts in order to answer questions of primary and secondary assumption of the risk. *Id.* at 230; *see also Wagner,* 396 N.W.2d at 226.

The *Baber* court cited two decisions of this court in which primary assumption of the risk was applied as a matter of law. One of these, *Goodwin v. Legionville Sch. Safety Patrol Training Ctr.,* 422 N.W.2d 46, 48, 50 (Minn.App.1988), *pet. for rev. denied* (Minn. June 23, 1988), involved an individual who knew about the hazards of roofing but nonetheless volunteered to participate in a roofing project. She fell and was injured. The trial court, in applying primary assumption of the risk, determined that the individual had known of the risk that she might be injured if she worked on a roof. She also appreciated the risk but nevertheless voluntarily chose to become one of those working on the roof. *Andren,* 465 N.W.2d at 104, involved an individual who lit a cigarette in a basement after he smelled natural gas leaking. There was clear knowledge of and appreciation of the

risk in *Andren* and a voluntary proceeding in the face of that risk. *Id.* at 105.

The *Baber* court determined that the injured party had not primarily assumed the risk of being impaled, because such a risk was not "a necessary and incidental part of the job" he was performing at that time, i.e., guiding his brother's operation of a backhoe. *Id.* at 231. While a jury could find that the plaintiff had secondarily assumed the risk of his injury, the *Baber* court held, "[t]he hazardous reinforcing rods were not so clearly a necessary and incidental risk of guiding the backhoe as to invoke the doctrine of primary assumption of the risk as a matter of law." *Id.*

Application of the doctrine of primary assumption of the risk in this case would require approval of the trial court's conclusion that Doe consented to a necessary and incidental risk that the wet T-shirt contest would degenerate to such a degree as to subject her to criminal acts.[5] However, manifest consent to a necessary and incidental risk involved in lighting a cigarette in a gas-filled basement or working on a roof with full knowledge of the danger are scarcely analogous. A wet T-shirt contest can be performed safely. *See Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 128 (1974) (no primary assumption of the risk in consenting to snowmobiling, which *can* be performed safely).

■ Doe cannot be said to have consented to the risk that BIR and NCS would negligently supervise the event. *See Wagner,* 396 N.W.2d at 226 (negligent maintenance and supervision are not inherent risks of patronizing a skating rink). Moreover, a finder of fact could conclude that Doe's intoxication rendered her incapable of comprehending any incidental risk. *See Maras v. City of Brainerd,* 502 N.W.2d 69, 79 (Minn. App.1993) (primary assumption of the risk did not bar plaintiff's claim, because he "was clearly intoxicated and it cannot be shown he had the means of comprehending the danger"), *pet. for rev. denied* (Minn. Aug. 16,

1993). The doctrine of primary assumption of the risk was an improper basis for the trial court's grant of summary judgment.

■ Should principles of secondary assumption of the risk or contributory fault apply, summary judgment was improper; such issues must be resolved by a jury. *See, e.g., Fisher v. Edberg,* 287 Minn. 105, 110, 176 N.W.2d 897, 900 (1970); *Stephenson v. F. W. Woolworth Co.,* 277 Minn. 190, 192–93 n. 1, 194, 152 N.W.2d 138, 142 n. 1, 143 (1967).

### D. BIR's Liability for Acts of NCS

BIR contends that any negligence on the part of NCS cannot be imputed to it, since NCS was an independent contractor. Doe contends that there is a genuine issue of material fact whether NCS acted in the capacity of an independent contractor.

■ Generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act of omission of the contractor or his servants." *Conover v. Northern States Power Co.,* 313 N.W.2d 397, 403 (Minn.1981) (citations omitted).

An exception to the rule absolving the employer of liability for the acts of the independent contractor is the retained-control exception, defined by the Restatement (Second) of Torts § 414 comment:

> [T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. * * * There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

■ Doe has cited facts to indicate that BIR retained a considerable degree of control over how NCS did its job. These include

---

5. We wish to emphasize the inapplicability of the doctrine of primary assumption of the risk to the duty toward Doe imposed on respondents by Minn.Stat. § 617.246. Under the statute, there arises no question as to whether Doe consented, not only because the doctrine of primary assumption of the risk does not apply to violations of the statute, but because the statute specifically denies the use of any consent on the part of the complainant as a defense.

BIR's providing tools and equipment used by NCS, restricting NCS's use of BIR's public address system and participating with NCS in establishing a security plan. We conclude that a genuine issue of material fact exists whether BIR retained sufficient control over NCS to allow a jury to find that NCS should be considered an agent rather than an independent contractor for the purposes of vicarious liability. *See Dalager v. Montgomery Ward & Co., Inc.,* 350 N.W.2d 391, 394 (Minn.App.1984) (whether agency exists is generally a question for the jury unless the evidence is conclusive one way or the other).

### E. Summary Judgment *Sua Sponte*

Doe cites as reversible error the trial court's *sua sponte* ruling, without notice to Doe, that summary judgment was warranted in this case because "[p]laintiff has failed to prove any physical manifestations of her emotional distress and has failed to even allege severe emotional distress." BIR and NCS claim that this *sua sponte* ruling was proper. Neither respondent raised an issue of damages in their motions for summary judgment.

A trial court may grant summary judgment *sua sponte* so long as it affords the adverse party an opportunity to oppose such an action. *Zimprich v. Stratford Homes, Inc.,* 453 N.W.2d 557, 561 (Minn.App.1990). Unless an objecting party can show prejudice from lack of notice or other procedural irregularities, or was not afforded a meaningful opportunity to oppose summary judgment, the court's judicious exercise of its inherent power to grant summary judgment in appropriate cases should not be disturbed. *Federal Land Bank of Saint Paul v. Obermoller,* 429 N.W.2d 251, 255 (Minn.App.1988), *pet. for rev. denied* (Minn. Oct. 26, 1988). The *Obermoller* court found no prejudice to the party adverse to the summary judgment because that party had received notice and had meaningfully opposed summary judgment at a hearing. *Id.* Doe, on the other hand, received no notice that the trial court would consider summary judgment on the basis of damages as alleged, nor was she afforded a meaningful opportunity to address the court's concern. Prejudice is unavoidable when a trial court denies any opportunity to marshall evidence in opposition to a basis for summary judgment raised *sua sponte*.

We note as well that the extent of Doe's damages is a material fact in dispute that appears to have to await trial for resolution. Doe suffered physical impact during the course of the contest. Her claimed damages were not only for infliction of emotional distress, as cited by the trial court. The damages claimed by appellant on the facts produced thus far distinguish this case from the authority cited by the trial court in making the summary judgment order; in *Stadler v. Cross,* 295 N.W.2d 552, 553–54 (Minn.1980), no physical impact occurred.

The trial court's grant of summary judgment *sua sponte* was error and is reversed.

### DECISION

Summary judgment was erroneously ordered. Doe has produced evidence to support claims against BIR and NCS based on both statutory and common law principles of tort liability. This evidence presents genuine issues of material fact for a jury to resolve. Primary assumption of the risk was erroneously applied. The trial court's grant *sua sponte* of summary judgment was error.

**Reversed.**